## VON BREMEN et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 8, 1912.)

### No. 31.

1. .CRIMINAL LAW (§ 304*)—JUDICIAL NOTICE—MISBRANDING—SALAD OIL.

Where an information charged defendant with delivering for shipment in interstate commerce sesame oil, misbranded as "Imported Salad Oil," in violation of the food and drugs act (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187]), the court could take judicial notice that standard lexicographers defined the words "salad oil" as "olive oil."

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 700–717; Dec. Dig. § 304.*

What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

2. FOOD (§ 21*)—MISBRANDING.

Evidence *held* insufficient to warrant a finding that sesame oil, delivered for shipment in interstate commerce, under a label, "Imported Salad Oil," was misbranded.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 21.*]

3. FOOD (§ 21*)—MISBRANDING—SALAD OIL—EVIDENCE.

In a prosecution for so labeling or branding oil as to deceive and mislead the purchaser, in violation of the food and drugs act (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187]), in that sesame oil not made from olives was branded as salad oil, it was error to refuse to permit dealers in salad oil not made from olives ·to say whether they had ever heard any complaints from purchasers to the effect that they had been misled or deceived.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 21.*]

4. FOOD (§ 21*)—EVIDENCE—MISBRANDING FOOD—SALAD OIL.

Where sesame oil not made from olives was branded, "Imported Salad Oil," it was error to refuse to permit large dealers in such oil to state the understanding of the trade as to the meaning of the words "salad oil."

[Ed. Note.—For other cases, see Food, Dec. Dig. § 21.*]

5. FOOD (§ 21*)—MISBRANDING FOOD—EVIDENCE.

In a prosecution for misbranding sesame oil as "Imported Salad Oil" to deceive and mislead purchasers, in violation of the food and drugs act (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187]), it was error to permit the government to cross-examine defendants' witnesses as to whether they thought the words "salad oil" would be less misleading, if the words, "pressed from cotton seed," on some of the labels were in larger type, or if the cans had been labeled simply, "cotton seed oil."

[Ed. Note.—For other cases, see Food, Dec. Dig. § 21.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Henry Von Bremen and others, doing business as Von Bremen, MacMonnies & Co., were convicted of violating the food and drugs act, and they bring error. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Lange & Kroyer, Sullivan & Cromwell, and F. D. Pollak (Gustav Lange, Jr., Hjalmar H. Boyesen, and J. Hampden Dougherty, Jr., of counsel), for plaintiffs in error.

Henry A. Wise, U. S. Atty. (Robert Stephenson, Asst. U. S. Atty., of counsel), for the United States.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is an information under the food and drugs act of June 30, 1906, against the defendants, who compose the firm of Von Bremen, MacMonnies & Co., containing two counts. The first count charges them with delivering for shipment from New York to Galveston a can bearing the label, "Imported Salad Oil Morel Brand," which was a misbrand because it was false and misleading, in that it indicated that the contents of the can was olive oil, whereas it was sesame oil. The second count charges that the same can was misbranded, in that it was labeled or branded so as to deceive and mislead the purchaser into believing that it contained olive oil, whereas it contained sesame oil.

The first count falls within the first subdivision of section 8 of the act as to foods, viz., that the article "was offered for sale under the distinctive name of another article," namely, olive oil. The second count falls within the second subdivision, viz., that the article was "labeled or branded so as to deceive and mislead the purchaser," namely, by making him think he was getting olive oil, whereas he was getting sesame oil.

[1] The trial judge, taking judicial notice that standard lexicographers define the words "salad oil" as "olive oil," denied the defendants' motion to quash the information on the ground that it alleged no offense, and afterwards, it being stipulated that the can contained sesame oil and not olive oil, he denied the defendants' motion to direct a verdict in their favor. These rulings were within our decision in the Brina Case, 179 Fed. 373, 103 C. C. A. 558. The government thereupon rested, and the defendants showed by a large number of witnesses that for some 40 years a perfectly healthy oil for edible purposes had been made from cotton seed and sold in enormous quantities in this country as "salad oil," and that other edible oils were made from the seed of sesame, a kind of grass, and from peanuts and from corn and sold as salad oil. The oil in question is sesame oil imported by the defendants. The defendants also showed that olive oil is always, except perhaps in the case of one brand, labeled and sold as olive oil; that it is four times as expensive as the oils sold as salad oils and that these other oils are sold in vastly greater quantities, the American Cotton Seed Oil Company selling from 176,000 to 200,000 barrels and the Union Cotton Seed Oil Company 40,000 barrels a year of salad oil made from cotton seed.

In reply to this the government called two purchasers of oil, Edward Nougaret, steward of the Café Martin (in this country a month), who testified that nothing but olive oil was used there. Francis J. Englefield, purchasing agent of the Hotel Knickerbocker, testi-

fied that nothing but olive oil is used there, and that "salad" means the very best kind of olive oil. It also called three sellers of olive oil; John W. Eginton, an employé of James P. Smith & Co., who sell nothing but olive oil, testified that in his opinion "salad oil" means olive oil; Benito Maspero, an importer of Italian olive oil, who said that in his line of business "salad oil" is generally claimed to be olive oil; Henry L. Marks, chief clerk of an importer of olive oil, testified that in the trade they supply "salad oil" means olive oil. They all said their oil was labeled olive oil.

[2] The act does not make the intention of the defendants material; but, as the case was a criminal one, the jury was bound to be convinced beyond a reasonable doubt that the article in question was misbranded before they could find the defendants guilty. We think that the proof did not justify such a conclusion, and that the defendants' motion for the direction of a verdict in their favor should have been granted.

[3] Assuming, however, that there was enough to send the case to the jury, other errors were committed. We think it was error upon the state of facts set forth above to refuse to let the dealers in salad oil not made of olives say whether they had ever heard any complaints from purchasers to the effect that they had been misled or deceived. Such testimony would be directly relevant to the charge in the second count that the article was branded so as to deceive or mislead purchasers.

[4] It was also error to refuse to let large dealers in this salad oil say what the understanding of the trade was as to the meaning of the words "salad oil." It would certainly be relevant to the inquiry under the first count that the article was branded under the distinctive name of olive oil to show what the trade which buys and sells thousands of barrels of this "salad oil" a year understands by those words, and it was also relevant to the inquiry under the second count because it is a fair inference that the trade does not sell salad oil to the customer as anything else than what it really is.

[5] So we think it was error to permit the government to cross-examine the defendants' witnesses as to whether they thought the words "salad oil" would be less misleading if the words "pressed from cotton seed" on some of the labels were in larger type, or if the cans had been labeled simply "cotton seed oil." The question to be decided was whether purchasers supposed they were getting olive oil when they purchased "salad oil," and it throws no light on this to inquire whether they could have been in any doubt if the words "cotton seed oil" alone were used, or if the words "cotton seed oil" were printed in large type on the label. We think the case was tried throughout a little too strictly against the defendants.

The judgment is reversed.

LACOMBE, Circuit Judge. I concur in the conclusion to reverse, because I think some testimony was excluded which defendant was entitled to have in the case. But I am of the opinion that there was

a question for the jury to pass upon and that that question was whether the article was labeled so as to deceive or mislead "the purchaser," who, in the case of a sale at retail, would be one of the general public not necessarily informed as to the trade meaning of words.