[No. 10065.   Department One.   March 11, 1912.]

MAKINS PRODUCE COMPANY, *Appellant*, v. I. P. CALLISON, *Respondent*.[1]

JUDGMENT—RES JUDICATA—SALES—ACTION FOR PRICE—DEFENSES— CONDITION OF ARTICLE. In an action for the price of butter sold and delivered, which defendant rejected because in bad condition and not according to sample, a judgment in a proceeding *in rem* by the state inspector condemning the butter as "renovated" butter, the sale of which was prohibited, is admissible in evidence to prove the condition of the butter at the time it was seized.

JUDGMENT—RES JUDICATA—PARTIES AND MATTERS CONCLUDED. In an action for the price of butter sold and delivered, a judgment in a proceeding *in rem* condemning the butter as "renovated" butter, is not, as a matter of law, final and conclusive upon the plaintiff as to the status and condition of the butter at the time it was sold to the defendant three and one-half months before its seizure, where the facts were all in dispute.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered June 1, 1911, dismissing an action for the price of goods sold and delivered, upon withdrawing the case from the jury at the close of plaintiff's evidence.   Reversed.

*Boner & Boner*, for appellant.

*John C. Hogan*, for respondent.

PARKER, J.—This action was commenced by the plaintiff in the superior court for Chehalis county, to recover from the defendant $1,359.43 claimed as the purchase price of butter sold to the defendant.   The cause proceeded to trial before the court and a jury; and at the conclusion of the evi-

[1]Reported in 121 Pac. 837.

dence, the court, upon motion of counsel for the defendant, withdrew the cause from the consideration of the jury, and rendered a judgment of dismissal against the plaintiff. From this disposition of the cause, the plaintiff has appealed to this court.

Appellant is a dealer in butter and other products, having its place of business in San Francisco, California. The respondent is a dealer in similar products, having his place of business in Aberdeen, in this state. The complaint is in usual form, simply alleging the sale and delivery of the butter, the amount of the agreed price to be paid therefor, and respondent's failure to pay the same. The issues in the case arise upon the affirmative defense contained in respondent's answer, wherein he alleges that the butter was sold to him by sample:

"That upon inspection it was found by the defendant that said pretended butter was not in any respect according to the sample theretofore shipped and that said pretended butter was wholly unfit for use and was entirely worthless as an article of food, of which facts the defendant notified the plaintiff that the defendant held said property subject to the order of the plaintiff to which the plaintiff agreed and acquiesced and thereafter treated said property as its own, and said property was worse than worthless to the defendant in his said business as a wholesale dealer; that said pretended butter was in fact what is called 'renovated' butter and the sale thereof prohibited by the laws of the state of Washington, except under certain specified conditions; that the plaintiff, in violation of the laws of the state of Washington, did not inform the defendant that the said pretended butter was renovated butter, and the defendant was ignorant of that fact at the time of ordering same and did not learn of that fact until some time thereafter; that on the 14th day of October, 1909, all of said pretended butter was seized by the dairy and pure food inspector of the state of Washington acting under authority of law, and the said dairy inspector of the state of Washington on the 14th day of October, 1909, filed a petition in the superior court of the state of Washington for the condemnation of said pretended butter and for the confiscation thereof according to law; that an

order to show cause upon said petition addressed to this defendant was issued in said proceedings made returnable October 26th, 1909, and that this defendant immediately notified the plaintiff of said proceedings and demanded of the plaintiff that the said plaintiff defend said proceedings, and the defendant tendered to the plaintiff the defense of said proceeding and the plaintiff did in a manner undertake the defense of said proceedings and caused certain affidavits to be filed therein, and that upon the hearing had in said proceeding before the said superior court said pretended butter was condemned and confiscated by the order and judgment of the superior court."

Appellant's reply to this new matter is in effect a denial thereof.

The butter was received by respondent at Aberdeen about July 1, 1909. Sometime thereafter, there arose some controversy between the parties as to the quality of the butter and as to whether or not it was according to sample, when respondent notified appellant that he rejected the butter and held it subject to appellant's order. The evidence is in conflict as to the condition of the butter when it was received, as to whether it was according to sample, as to whether or not it was renovated butter, and also as to whether or not appellant had agreed to take the butter back and treat the sale as rescinded. It seems clear to us that none of these disputed questions could, in the light of the evidence, have been determined by the court as a matter of law, but called for the submission of the cause to the jury; unless it be held that the condemnation proceeding and judgment alleged in the affirmative answer, the record of which was introduced in evidence, constituted a conclusive adjudication as against appellant establishing facts from which it could be decided, as a matter of law, that appellant cannot recover in this action. The learned trial court withdrew the case from the jury and rendered his decision upon the ground that that condemnation proceeding and judgment was *res judicata* of facts, which conclusively determined all issues of fact in this action against appellant. We will now notice that ad-

judication and the effect of it upon appellant's rights which are involved in this action.

We have noticed that the butter sold by appellant to respondent was received by respondent at Aberdeen about July 1st, 1909. The condemned butter was seized by the state dairy inspector on October 12, 1909, who immediately thereafter commenced the condemnation proceedings in the superior court for Chehalis county, alleging that the seized butter was then "renovated butter." This proceeding resulted in a condemnation judgment. This it will be noticed was about three and one-half months after the delivery of the butter to respondent which had been sold to him by appellant. The evidence shows that, soon thereafter, respondent notified appellant by letter of the seizure and commencement of the condemnation proceedings, and requested appellant to defend the same. Appellant then apparently taking it for granted from the statements in respondent's letter that the butter seized and sought to be condemned was the same butter sold and delivered by it to respondent, some three and one-half months previous, but evidently having no other information on that subject, caused an affidavit to be made by George Makins, at San Francisco, touching the nature and condition of the butter sold and delivered by it to respondent, in effect denying that that butter was then renovated butter. This affidavit was transmitted by appellant to respondent enclosed with a letter, stating as follows:

"San Francisco, October 25, 1909.
"Chehalis Produce Co.,
          "Aberdeen, Washington.
    "Gentlemen: Upon receipt of your letter this morning advising us that the state pure food inspector was about to take the butter which you have there unless we make some defense, we wired you that we would mail you to-day papers to show that he had no right to seize the butter. We enclose herewith affidavit of the writer as to what this butter is. We cannot see whereby the state inspector has any reason to condemn the butter.

"We wish further to state that if he will release the butter, that we will withdraw same from the state and have it sold elsewhere, providing it is agreeable to you, and thereby mitigate the damage as much as possible to the party injured. After the butter has been sold and disposed of, we will endeavor to come to some terms as to who should stand the loss. Understand if this is not agreeable to you, we would not care to take the butter away, and will hold you liable for the full amount. It seems to us, however, that there is no question but what this butter can be sold at the proper place. . . .

"Very truly yours,
"Makins Produce Co.
"By Geo. Makins."

This affidavit was filed in the condemnation proceeding by respondent, with an affidavit of his own wherein he, in effect, disclaims ownership of the butter which had been seized, stating that it was held by him subject to appellant's order. Appellant was never served with any process in the condemnation proceedings and apparently had no knowledge of it save such as respondent communicated to it, and did nothing towards appearing therein or defending the same other than as indicated in its letter and the affidavit sent to respondent. This, however, we think did not make appellant a party to that action, any more than he and all the world were parties thereto by virtue of it being a proceeding *in rem*.

The substance of the contentions of counsel for appellant may be stated as follows: (1) That the condemnation proceeding and judgment is not admissible in evidence against it in this action for any purpose; and (2) that the condemnation judgment in no event was an adjudication of matters from which the court could decide, as a matter of law, against appellant's right of recovery in this case, even though it may be admissible in evidence to prove the condition of the butter which was seized and condemned, at the time of such seizure, and even though the judgment may be conclusive upon that single fact as against appellant.

Let us first inquire, Was this judgment admissible in evidence for any purpose? Argument in support of the view

that this seizure and condemnation of butter was a proceeding *in rem* seems hardly necessary. It was prosecuted under the authority given by Rem. & Bal. Code, §§ 5447c, 5447e, relating to the sale of dairy products and prohibiting the sale of "renovated butter" except under certain conditions. The petition of the dairy inspector for the condemnation, charges that the butter seized by him was renovated butter. Reading the judgment alone, it is not clear that the butter was adjudged to be renovated butter, but read in connection with the petition seeking its condemnation, it seems plain that the judgment had the effect of adjudicating that it was renovated butter at the time of its seizure, for that was the real issue for determination in that case and was necessarily so determined by the rendition of the judgment. The proceeding was conducted, as the state law evidently contemplates it should be, upon the same principle as the Federal government proceeds in its revenue condemnation cases; and judgments in such cases, being *in rem*, are held to be conclusive upon all persons in so far as such judgments determine the status of the property condemned, at the time of its seizure. In 2 Black on Judgments, § 799, the author says:

"A judgment rendered by a competent court, declaring the condemnation or forfeiture of goods seized for a breach of the excise or revenue laws, is strictly *in rem*, and is binding and conclusive upon all persons, so that the legality of the seizure cannot be again contested in any proceeding, nor will trespass lie against the officer who took the goods, for the purpose of trying the question anew. In one of the English cases it appears that the action was for the price of liquor sold by the plaintiff, and the defense was interposed that the liquor was adulterated, to prove which fact the defendant offered in evidence the record of its condemnation in the Court of Exchequer. It was held that the record was admissible, as that proceeding was *in rem*."

See, also, *Hart v. M'Namara*, 4 Price (Exch. Rep.), 154; *Kriess v. Faron*, 118 Cal. 142, 50 Pac. 388; 23 Cyc. 1408-1410.

We are of the opinion, in view of the fact that this condemnation judgment was rendered in a proceeding *in rem* by a court having jurisdiction of the *res*, that the record of the proceeding and judgment was in any event admissible in evidence to prove the status of the condemned butter at the time it was seized. Proof of this fact was rendered admissible by the testimony which tended to show that the condemned butter was the same butter which appellant had sold and delivered to respondent.

Let us next inquire, Was the condemnation judgment an adjudication of all issues of fact here involved, so as to enable the court to decide, as a matter of law, against appellant's right to recover in this action? The judgment may have been admissible in evidence, and still not be conclusive upon all facts which were necessary for respondent to prove in support of his affirmative defense in order to successfully resist appellant's claim. The only fact with which we are here concerned which was adjudicated in the condemnation proceeding, as against all persons including appellant, is the fact that the butter was renovated butter at the time of its seizure. It was not finally adjudicated by that judgment that the condemned butter was renovated butter on July 1st, three and one-half months before its seizure, nor that the butter so condemned was the butter which was sold and delivered by appellant to respondent, nor was it an adjudication determining that appellant had agreed to take the butter back and regard the sale as rescinded. These facts were all in dispute and the evidence was conflicting relative thereto. Surely appellant had the right to prove that the butter it furnished respondent was so furnished according to sample; that it was not then renovated butter; that it was not the butter which was condemned; and that no agreement or understanding was arrived at as to appellant taking the butter back and regarding the sale as rescinded. However conclusive that condemnation judgment may be as to the status and condition of the condemned butter at the time

of its seizure, that judgment is not conclusive as to any of these other disputed facts upon which the respective rights of the parties depend. In the recent case of *McCann v. Ellis* (Ala.), 55 South. 303, involving the probate of a will which is, in a sense, a proceeding *in rem*, there being nothing involved except the status of the will, the court observed:

"It has been uniformly ruled by all English and American cases which we have examined that proceedings to probate or to set aside the probate of wills are proceedings *in rem* and not *in personam;* that such proceedings are exclusively to determine the status of the *res*, and not the rights of the parties. Judgments or decrees as to the status of the *res*, in proceedings strictly *in rem*, are conclusive against all the world as to that status."

Nothing was involved in the condemnation case which became *res judicata* by the judgment therein, as against all the world, save the condition of the condemned butter at the time of its seizure. The following cases involving lien foreclosures, bankruptcy adjudications and probate decrees are instructive as showing the limited effect of such adjudications: *Ward v. Green* (Tex. Civ. App.), 28 S. W. 574; *Toby v. Brown,* 11 Ark. 308; *Sly v. Hunt,* 159 Mass. 151, 34 N. E. 187, 38 Am. St. 403, 21 L. R. A. 680, and note; *Tilt v. Kelsey,* 207 U. S. 43; *Manson v. Williams,* 213 U. S. 453.

In the very recent case of *Lewers & Cooke v. Atcherly,* 32 Sup. Ct. 94, decided by the supreme court of the United States, December 4, 1911, involving a probate decree and its effect as an adjudication, Justice Holmes, speaking for the court, observed:

"Of course, the later decree establishing the will does not affect the case. That determined only that Kaniu left all her property to Kalakaua, but not that any particular property belonged to the inheritance."

In 2 Black on Judgments, § 795, the limited effect of judgments *in rem* is indicated as follows:

"It is commonly said that such a judgment binds 'all the

world.' It is more accurate to say that the judgment is con-
clusive against any person, in any subsequent controversy,
where the grounds of the adjudication, or the fact of its ren-
dition, or any of its legal consequences, become relevant and
material facts."

Counsel for respondent rest their contentions as to this
condemnation judgment being *res judicata* of all facts which
enable the court to determine all the issues here involved, as
a matter of law without submission of the cause to the jury,
upon the decision of the supreme court of California in
*Kriess v. Faron,* 118 Cal. 142, 50 Pac. 388, which we have
above cited in support of the view that the judgment was ad-
missible in evidence. In that case, the plaintiff sought to
recover the purchase price of certain personal property which
was being used in connection with a brewery, the brewery
being leased to the purchaser of the personal property at the
same time. It appears from the opinion that, at the time of
the sale, the property was subject to seizure and confisca-
tion by reason of the fact that it was then, and for some time
prior had been, used in such manner as to render it liable to
seizure and confiscation under the revenue law of the United
States. A short time after the sale, it was seized by a rev-
enue officer and thereafter condemned by judgment of a
United States district court, in a proceeding *in rem* prose-
cuted for that purpose. In the action to recover the pur-
chase price of that sale, the purchaser, who was defendant
therein, offered in evidence that condemnation judgment for
the purpose of showing failure of consideration for the pur-
chase price, he having lost the property by the condemna-
tion judgment. It was held by the lower court, and also the
supreme court of that state, that that judgment was admis-
sible in evidence in that action and conclusive of the status
of the property at the time of the sale. It is true that the
seizure and condemnation was some time after the sale, but
it appears to have been conceded that the facts rendering the
property liable to seizure and confiscation under the revenue

laws of the United States were the same at the time of the sale as at the time of the seizure and confiscation, nor was there any dispute as to the identity of the property so confiscated. Under such a state of facts, it is easy to see how the only disputed fact in the case being proven by an adjudication *in rem*, enabled the court to decide, as a matter of law, the whole controversy upon the ground that the judgment of condemnation conclusively decided the only fact in controversy, and hence, decided against plaintiff's right of recovery. The plaintiff had simply attempted to sell to the defendant property which, at the time of the sale, was subject to seizure and confiscation. It was so adjudged in the condemnation proceeding, which was a proceeding *in rem*, binding upon the plaintiff as well as upon all others. We have seen that, in the case before us, there are involved disputed facts upon which the evidence is conflicting, which were not decided and could not be decided in the condemnation judgment relied upon in this case as a former adjudication of all the issues here involved.

We conclude that, while the condemnation judgment was admissible in evidence in this case in view of all of the other evidence introduced, it was not decisive of all facts here involved, in respondent's favor. It follows that the learned trial court erred in withdrawing the case from the jury. For that reason, the judgment must be reversed and a new trial awarded to appellant. It is so ordered.

CHADWICK, GOSE, and CROW, JJ., concur.