## UNITED STATES v. 397 CASES, ETC., OF SALAD OIL.

District Court, D. New Jersey.
Aug. 26, 1936.

388

John J. Quinn, U. S. Atty., of Red Bank, N. J., for the United States.

I. Herbert Levy, of Trenton, N. J. (J. Bertram Wegman, of New York City, of counsel), for Agash Refining Corporation, intervener.

FORMAN, District Judge.

On November 21, 1934, the government filed a libel against the above-designated salad oil, then in the possession of one of the customers of Agash Refining Corporation, hereafter referred to as "Agash." The libel was filed under the Food and Drug Act of June 30, 1906 (21 U.S.C.A. § 1 et seq.), on the ground that it was misbranded within the meaning of section 8 of said act (21 U.S.C.A. § 10). Agash is the refiner and packer of the products involved in these proceedings. After the seizure, Agash filed a petition to intervene and an order was entered accordingly. Agash then filed exceptions to the libel, and the government moved to dismiss the exceptions for the reason that Agash lacked a substantial interest in the seized property and that the order to intervene was entered without notice to the government. The matter was then presented to the court for hearing on the exceptions and the motion of the government.

It was conceded that notice was not given to the government of the application to intervene. It was also conceded that the government had in its files, for a considerable period of time, a copy of the order granting the right to intervene without making any motion to vacate it. The same arguments presented to the court on the hearing with respect to this phase of the matter are the arguments that would have been presented if notice had been given.

The interest of Agash in the proceedings is based upon the following facts: (1) That the seized cans of oil bore labels on which appeared "Italian Cook Brand," being a trade-mark which it owns and under which it has marketed its products for over

twenty years last past; and (2) that it must compensate its purchaser for any loss by reason of the seizure if the government prevails.

■ As a general rule intervention is permitted (a) in the discretion of the court when the ends of justice will be served by permitting the petitioner to be heard, and (b) as an absolute right when the petitioner has a direct interest in the litigation and the subject matter thereof, and such intervention is necessary for its protection. Richfield Oil Co. v. Western Machinery Co. (C.C.A.) 279 F. 852; Central Trust Co. of N. Y. v. Chicago, R. I. & P. R. Co. (C.C.A.) 218 F. 336. In a suit against a sublicensee of a patent, the main licensee is permitted to intervene to protect its sublicensee. Hewes & Potter v. Meyerson (D.C.) 36 F.(2d) 1001.

"It has been stated in general terms that the right of a third person to intervene in an action at law in which he is not a party depends largely, if not entirely, upon the necessity for such intervention in order that the intervener may protect his rights, but in most jurisdictions it is not required that applicant shall be a necessary party in order to permit intervention." 47 C.J. p. 97, § 190.

■ While it is true that the statute directs that the proceedings conform to Admiralty practice, rights are determined as in any action at law. Four Hundred and Forty-Three Cans of Frozen Egg Product v. United States, 226 U.S. 172, 33 S.Ct. 50, 53, 57 L.Ed. 174, in which case the Supreme Court said: "We do not think it was intended to liken the proceedings to those in admiralty beyond the seizure of the property by process in rem, then giving the case the character of a law action, with trial by jury if demanded, and with the review already obtaining in actions at law." See, also, the case of United States v. French Sardine Co., Inc. (C.C.A.) 80 F. (2d) 325. In the case of Hipolite Egg Co. v. U. S., 220 U.S. 45, 31 S.Ct. 364, 55 L. Ed. 364, it appears affirmatively from the opinion that the shipper contested although the res was property of another (the purchaser). In that opinion the vital interest and concern of the shipper or manufacturer is well demonstrated as the court points out the dual purpose of the Food and Drug Act to punish the goods as well as the shipper of the goods.

■ The right to intervene cannot be determined on the same basis as a strict admiralty proceeding involving a ship. If the manufacturer is not permitted to intervene, he has no way of protecting his product unless he is able to secure the cooperation of the purchaser to defend the action. If, however, the purchaser is not willing to do so, the position of the manufacturer is helpless unless he is given the right to intervene.

The interests of Agash are vitally affected by these proceedings, and it is the conclusion of the court that Agash was and is entitled to intervene. The court further feels that the government should not interpose technical objections in matters of this kind to deprive persons, vitally interested in the outcome of the litigation, of an opportunity to be heard.

■ The libel alleges misbranding within the meaning of the aforesaid act, as follows: (1) That the statement on the label "Pure Vegetable Salad Oil" misleads or tends to mislead the purchaser into believing he is purchasing olive oil; (2) the use of the Italian national colors, plus certain wording on the label, creates the impression that the product is Italian olive oil; (3) that it purports to be a foreign product, when as a matter of fact it is a domestic product.

The second edition of Webster's New International Dictionary, published in 1934, defines "salad oil" as "an oil for salad dressing, specifically in trade any edible oil other than olive oil, as cottonseed, corn or peanut oil." In Von Bremen v. United States (C.C.A.) 192 F. 904, the defendants were charged with misbranding, for having labeled sesame seed oil as salad oil, the indictment charging that the description "salad oil" meant "olive oil." The Circuit Court of Appeals for the Second Circuit held that the defendants were entitled to an instructed verdict of acquittal. The Department of Agriculture recognizes the difference between "salad oil" and "olive oil," as is indicated in its Service and Regulatory Announcements, No. 393, published in Dunn's Food & Drug Laws, vol. 1, p. 106 (1922): "The use of wholesome vegetable oils other than olive oil for salad purposes has become widespread. The term 'salad oil' is no longer indicative of olive oil exclusively. In the absence of any statement, design, or device on the labels conveying directly or by implication any false or misleading impression concerning the origin or characteristics of the product, no objection will be made to the des-

ignation of edible vegetable oils other than olive oil as 'salad oil', with or without qualification."

On the argument, statement was made by counsel for Agash that the salad oil in question sold for about 25 per cent. of the price charged for olive oil, and this statement was not denied by the government. It is inconceivable under the circumstances that a person of ordinary intelligence could believe he was purchasing pure olive oil.

A can similar in every respect to that of the seized property and bearing the identical label was submitted to the court for inspection on the argument. The label speaks for itself.

"The court must determine the issue mainly by an inspection of the label itself." U. S. v. 267 Boxes of Macaroni (D.C.) 225 F. 79, 81.

The words "Agash Refining Corp. Bush Terminal, Brooklyn, New York," are prominently printed on the label. In this respect the case is distinguished from U. S. v. 267 Boxes of Macaroni, supra, where the words "Mfg. U. S. A." were in "small type within less than an inch of space, on the very narrow white margin on the lower edge of the label," and the name of the manufacturer and his location did not appear on the label. The court has the right to presume that the purchasers are of average intelligence. There is no basis for the libelant's contention that the public is deceived or likely to be deceived into believing that the product is a foreign one.

The libel next alleges that the use of the Italian national colors, together with the words on the main panels "Italian Cook," plus "Italian Cook Oil" on the side panels and certain Italian words relating to the product on one side panel, is misleading.

In this case there appears on the front of the can in large letters in English the words "ITALIAN COOK BRAND" over the picture of the upper part of a man dressed as a cook. This is a trade-mark which the packer has used on its products for over twenty years. Obviously the government does not contend that the trademark in itself is deceptive. It points to one small side panel of the can and says the wording is in the Italian language. On the other side panel, however, the same thing is set forth in the English language. There is nothing said either in the English or the Italian to mislead any person of av-erage intelligence that the product is Italian olive oil. This also distinguishes the case from U. S. v. 267 Boxes of Macaroni, supra. The libelant, however, goes one step further, and says that the Italian national colors appear on the can which misleads the public into believing the product is Italian olive oil. On the front and back panels of the can, there are three diagonal stripes of red, white, and green, as a background for the printed matter. There are three vertical stripes of red, white, and green in the national flag of Italy. Is the court to believe that the public has been deceived for years into thinking that "Canada Dry Ginger Ale" is a Canadian product because the word "Canada" is part of its trade-name, and because the map of Canada is displayed on its label? Is the court to believe that the public considers "Italian Balm" an Italian or foreign product? Is the court to believe that the public is misled by "Kraft French Dressing" and numerous similar products prepared by reputable dealers and which have been in use for years? The court gives the public credit for not being so gullible. It believes the can in question does not mislead, nor is it likely to mislead the public as alleged in the libel.

Exceptions to a libel serve practically the same purpose as a motion to strike because the libel does not disclose a cause of action. The averments in the libel properly pleaded, but not the conclusions of the libelant, are admitted in determining whether the libel sets forth a cause of action. The court, however, is not compelled on the argument of the exceptions to accept as true averments in the libel that are conclusively shown to have no basis in fact. In this particular instance the res was submitted, without objection, to the court for inspection and examination. The court is convinced after such examination that there is no basis in fact for the libel and that it should be dismissed. If the government files a libel in which it avers the article is black, exceptions are taken, and on the argument the court is permitted to examine the article and finds that it is white, the libel should be dismissed forthwith. If this were not so, the government, through its authorized agents, could libel any product that it desired and the manufacturer of the same could be ruined financially before the matter was heard by a jury. What good would it do such a manufacturer if the jury decided in his favor after the

damage was done? A summary method of this type must be available at all times. While the court has the power to dismiss a libel as herein set forth, it is a power which should not be used excepting in a case where there is obviously no basis for the libel and where there could be only one possible verdict that a jury could return; otherwise the libel should not be dismissed.

The exceptions are sustained. The motion to dismiss the exceptions is denied. The attachments are vacated and the property seized by the marshal is to be returned. A decree may be entered in accordance with this opinion.

The government made similar seizures of the same product, that is the same can and label, in the District of Connecticut, and the court's attention has been called to the opinion of Judge Thomas, rendered on April 10, 1935, sitting in the District Court for the District of Connecticut, 16 F.Supp. 385, involving the same exceptions that were taken to similar libels, and this court has reached the same conclusion as was reached by Judge Thomas in his opinion.