BOB'S CANDY & PECAN COMPANY V. J. P. MCCONNELL ET AL.

No. 7973.   Decided January 6, 1943.
Rehearing overruled February 3, 1943.
(167 S. W., 2d Series, 511.)

*Terrell, Davis, Hall & Clemens,* of San Antonio, and *Leonard Farkas,* of Albany, Georgia, for petitioner.

The Court of Civil Appeals erred in holding that the trial court erred in finding that the pecans destroyed were the pecans shipped. Stovall v. Martin, 210 S. W. 321; Pitts v. Camp County, 120 Texas 558, 39 S. W. (2) 608; Goldsmith v. Ohio Trust Co., 283 S. W. 299; City of Houston v. Scanlan, 120 Texas 264, 37 S. W. (2d) 718.

*Harrell & Bowers,* of Breckenridge, and *Frank M. Harrell,* of San Saba, for respondents.

After the jury had been unable to agree upon the issue as to whether the pecans destroyed were the pecans shipped the Court of Civil Appeals correctly held that the trial court erred in so finding. Lipshitz v. Lindsay National Bank, 33 S. W. (2d) 874.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

Petitioner, Bob's Candy & Pecan Company, of Albany, Georgia, purchased through W. T. Mayne & Co., brokers of Austin, Texas, a carload of pecans from respondent, J. P. McConnell & Sons, of San Saba, Texas. The pecans were loaded at San Saba on January 10, 1936. The next day the McConnells drew a draft for $1,800.36, the sale price of the pecans, and attached to it the weight certificate and a shipper's order bill of lading. These they indorsed and delivered to the City National Bank of San Saba, which credited the McConnells with the amount of the draft and forwarded the draft, bill of lading and certificate through regular banking channels to

the Albany Exchange National Bank, of Albany, Georgia, which had telegraphed a guaranty to the San Saba bank, on January 8, that the draft would be paid on presentation if supported by bill of lading and weight certificate "covering 40,000 pounds of pecans at 4½c per pound fob San Saba, Texas." The pecans arrived in Albany on January 17. Although the bill of lading did not allow inspection, petitioner, by means of a trust receipt, procured the bill from the Albany bank, delivered it to the railway company, opened the car on January 18, and examined the pecans. Claiming that it found the pecans unfit for human consumption, petitioner refused to accept them. It then got the bill of lading from the railway company and returned it to the Albany bank.

Within the next few days the pecans were twice inspected by agents of the Food and Drug Administration, United States Department of Agriculture, and, on January 29, libel proceedings were filed in the United States District Court for the Middle District of Georgia, to condemn them because they consisted "in whole or in part of a filthy, and decomposed vegetable substance, to wit: moldy, decomposed and wormy pecan nuts," in violation of the United States Food and Drug Act. On February 27, that court found that the pecans had been shipped in interstate commerce in violation of the statutes of the United States as alleged, adjudged them to be condemned and forfeited to the United States, and ordered the marshal to destroy them. The next day that officer certified that he had "totally destroyed" the pecans "by burning."

Thereafter petitioner sued the McConnells in Georgia and caused a writ of garnishment to be served on the Albany bank after the latter had received the draft from the San Saba bank but before it had remitted thereon. The bank answered that it had the sum of $1,800.36 on hand as payment of the draft, that it was not in position to answer to whom the money belonged, but was of the "opinion" that it was the property of the McConnells. The San Saba bank intervened and replevied the funds. After an appeal to the Georgia Court of Appeals, it was decreed that, because of the Albany bank's guaranty and the other facts stated above, the money belonged to the San Saba bank and was not subject to garnishment as the property of the McConnells.

This suit was then filed by petitioner against the McConnells and the City National Bank of San Saba, in the district

court of San Saba County, Texas, to recover the $1,800.36 paid for the pecans and $419.80 freight charges paid on the shipment. The bank was sued on the theory that, by taking the draft and crediting the McConnells therewith, it became the owner of the draft, the bill of lading and the pecans; that, in placing the pecans in interstate commerce for shipment from Texas to Georgia, both the McConnells and the bank warranted that they were merchantable and fit for human consumption, under the United States Pure Food Law.

Over petitioner's objection, the trial court submitted to the jury one issue, namely, whether the pecans shipped by the McConnells were the pecans condemned by the United States District Court at Albany. The jury were unable to agree on an answer and were, in due course, discharged. Petitioner then moved for judgment, claiming there was no issue for the jury to determine. The motion was granted, and petitioner was awarded judgment against both the McConnells and the bank, the latter being awarded judgment against the McConnells for whatever petitioner might realize against it.

The bank did not appeal. Upon appeal by the McConnells, the Court of Civil Appeals at El Paso reversed the judgment of the trial court and remanded the cause for a new trial as to both the McConnells and the bank.

Three points of error are assigned, namely, that the Court of Civil Appeals erred in holding (1) that the identity of the pecans was an issue for the jury's determination; (2) that, since the trial court based its judgment, in part, on the fact that the sales memorandum issued by Mayne & Co. on the pecan shipment was received by the McConnells and, therefore, constituted the sales contract between the parties and bound the McConnells by its warranty, it was error not to submit to the jury an issue as to whether the McConnells received the sales memorandum before shipping the pecans; and (3) that, since it was reversing the judgment as to the McConnells, it was necessary to reverse it also as to the non-appealing bank.

Without considering the effect of the libel judgment rendered by the United States District Court, on the issue as to the identity of the pecans, we think the trial court correctly concluded that the evidence presented no such issue for the jury. If the pecans destroyed by the United States marshal at Albany,

Georgia, were not the pecans shipped from San Saba, Texas, then somewhere, somehow, somebody took the true shipment and substituted a false one. This could have occurred only while the pecans were in transit or after they arrived at their destination. And we think it may be conceded that to substitute twenty tons and eight pounds of pecans, sacked in three hundred and forty eight bags, would have been no mean task. On this issue, the record shows that the McConnells loaded the pecans in railway car No. A T 37587 at San Saba, on January 10, 1936, consigned to petitioner at Albany, where they arrived on January 17. On January 18 petitioner's agent broke the seal on the car, inspected the pecans and found them defective, whereupon "said bags were returned to the car and the car was then closed." That day petitioner wired Mayne & Co., the brokers at Austin, that 75 per cent or more of the pecans were of poor quality. Two or three days later the pecans were inspected by the United States food inspector, who took samples from some of the sacks. On January 29, the United States of America filed a libel action in the United States District Court for the Middle District of Georgia to condemn the shipment, describing the same as "40,000 pounds, more or less, unshelled pecans in 348 unlabeled sacks * * in the original containers, unbroken, in the possession of the Atlantic Coast Line Railroad Company, Albany, Georgia, in car Sante Fe 37587, or elsewhere," and alleging that it had been made by the McConnells on January 10 in violation of the Food and Drug Act, in that "it consists in whole or in part of a filthy, and decomposed vegetable substance, to wit: moldly, decomposed and wormy pecan nuts." Upon the filing of this petition, the court ordered the pecans seized, and the marshal stored them in the warehouse of Atlantic Ice & Coal Corporation, in Albany. Due notice was given of the proceeding, and on February 27, the shipment, described as above, was condemned for the reason stated in the petition, and the marshal was ordered to destroy them. This he did on February 28.

■ The facts detailed constitute no evidence that the pecans destroyed were not the pecans shipped. The strongest deduction that might reasonably be drawn from them is that petitioner's agents and the officers of the United States District Court had an *opportunity* to take out the pecans originally shipped and to substitute others, and that, therefore, there is a *possibility* that this did occur. An inference cannot be based on a mere possibility. It can be based only on a fact proved or on some-

thing known to be true. Wright v. Conway, 34 Wyo. 1, 242 Pac., 1107. It cannot be based on a mere surmise or conjecture. Inferences of fact cannot be drawn from uncertain premises. Texas & N. O. Ry. Co. v. Brannen et al, 140 Texas 52, 166 S. W. (2d) 112. At least as to the court officers, a deduction that they made the exchange would be contrary to the presumption of law that they did their duty in the premises. 20 Am. Jur., p. 174, sec. 170. It was not a deduction that a jury could reasonably make, either as to petitioner's agents or as to the officers. "The probative force of the testimony does not go beyond the point of creating a mere surmise or suspicion" that the agents, officers or anybody else exchanged the pecans, and is not, therefore, in legal contemplation, *any evidence* of that fact. Joske v. Irvine, 91 Texas, 574, 44 S. W., 1059.

Respondents maintain that this issue was raised by the testimony of McConnells and a San Saba pecan raiser that the shipment in question came from some 225,000 pounds in the McConnell warehouse in San Saba, which were in good condition, and the testimony of another sheller in Albany that two cars of pecans bought by him from this lot and shipped at about the same time were in good condition when received. If relevant at all, this testimony related only to the *condition* of the pecans in the shipment to petitioner. It had no probative force as to their *identity*, that is, whether the pecans shipped were taken out and others substituted before the judgment of condemnation was entered by the federal court in Georgia. The trial court was correct in concluding that this testimony raised no jury issue.

■ The Court of Civil Appeals correctly held that the evidence is not conclusive as to whether the McConnells received a copy of the sales memorandum executed by Mayne & Co. covering the shipment to petitioner. However, that issue is wholly immaterial to a determination of the merits of this case. The McConnells shipped the pecans to petitioner, a pecan sheller, in interstate commerce, knowing they were to be processed and sold by it for human consumption. They impliedly warranted thereby that the pecans were fit for that purpose, under the United States Food and Drug Act. Kansas City Wholesale Groc. Co. v. Weber Packing Corp., 93 Utah 414, 73 Pac. (2d) 1272.

■ On this issue, it is asserted that the McConnells parted with title to the pecans in San Saba when they indorsed the

bill of lading to the San Saba bank. That proposition is likewise immaterial because, by indorsing the bill, they warranted that the pecans were merchantable and fit for human consumption. Sec. 114, Title 49, U. S. Code Annotated; Kansas City Wholesale Groc. Co. v. Weber Packing Corp., supra. See Berlowitz v. Standley, 117 Texas 362, 5 S. W. (2d) 963.

Anyhow, public policy imposes on the seller of food, under circumstances such as we have in this case, a warranty that the article sold is fit for human consumption. Jacob E. Decker & Sons, Inc., v. Capps et al, 139 Texas 609, 164 S. W. (2d) 828.

■ That the pecans were not fit for food was established by the judgment of the United States District Court that they were shipped in interstate commerce, when moldy, decomposed and wormy, in violation of the Food and Drugs Act and should, therefore, be condemned and forfeited to the United States. They were thereby adjudged to be valueless, and that judgment became *res adjudicata* as to the condition of the pecans at the time they were seized. Makins Produce Co. v. Callison 67 Wash. 434, 121 Pac., 837. And, as we have stated, the trial court properly found that the pecans seized were the pecans shipped, there being no evidence to the contrary.

Therefore, in view of the undisputed testimony that the pecans could not have deteriorated during their shipment from San Saba to Albany, under the conditions surrounding the same, respondents could not escape the effect of that judgment by any testimony as to the condition of the lot in the San Saba warehouse from which the shipment was taken or by testimony that two cars shipped at about the same time from the same lot to another sheller in Georgia arrived in good condition. That issue had already been foreclosed.

Respondents urge, however, that the judgment, although *in rem*, was not binding on them because a certified copy of the judgment roll offered in evidence by the petitioner did not show service of citation by posting and publishing as the federal statutes require. Although that process did not appear in the roll, the record shows by the undisputed testimony of one W. M. Humber, deputy United States marshal, that he published notice of the libel on January 31, 1936, in the Albany Herald, a newspaper published in the Middle District of Georgia, and that he also posted the notice on the front door

of the warehouse where the pecans were stored, both of which notices were returnable to the United States District Court on February 21, 1936. Copies of the notice so published and posted appear in the statement of facts as exhibits in connection with Humber's testimony. We think this was both competent and sufficient proof that process was properly served in the libel proceeding, because, at most, the roll merely is *silent as to the fact of service* by posting and publishing the notice. An that fact is fully supplied, not by a presumption arising from a judgment recital that "all requirements of law, with reference to notice and publication, have been duly complied with," but by the testimony of the officer that such service was duly had, which testimony is corroborated by copies of the notice and is in no manner disputed by the respondents. In that situation, we know of no rule of law which would preclude Texas courts from giving verity to the recitals of the the judgment, although it was rendered by a federal court in Georgia. See 25 Tex. Jur., p. 865, sec. 332; 33 Tex. Jur., p. 889, sec. 75.

■ Moreover, J. T. McConnell, one of the respondents, testified that he knew of the libel proceedings and that, although their lawyer had gone from San Saba to Albany before the suit was tried and judgment rendered, they took no part in the proceedings, notwithstanding they clearly had the right to intervene. United States v. 397 Cases, etc., of Salad Oil, 16 F. Supp., 387. Consequently, we think that the libel judgment, being *in rem,* was binding on the respondents. Kansas City Wholesale Groc. Co. v. Weber Packing Corp., supra.

What we have said disposes of respondents' complaint that the Court of Civil Appeals refused to pass on their contention that there was no evidence that the pecans were defective when they were delivered to the purchaser.

Obviously, it is unnecessary to consider the third point of error assigned.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion adopted by the Supreme Court January 6, 1943.

Rehearing overruled February 3, 1943.