# UNITED STATES OF AMERICA *v.* LEXINGTON MILL & ELEVATOR COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 548.   Argued January 5, 1914.—Decided February 24, 1914.

The primary purpose of Congress in enacting the Food and Drugs Act of 1906 was to prevent injury to the public health by the sale and transportation in interstate commerce of misbranded and adulterated food.

As against adulteration the statute was intended to protect the public health from possible injury by adding to articles of food consumption poisonous and deleterious substances which might render such articles injurious to health.

Where such a purpose has been effected by plain and unambiguous language by an act within the power of Congress, the only duty of the courts is to give the act effect according to its terms.

The inhibition in subdivision 5 of § 7 of the Food and Drugs Act of 1906 against the addition of any poisonous or other added deleterious ingredient which may render an article of food injurious to health is definitely limited to the particular class of adulteration specified, and in order to condemn the article under subdivision 5 it is incumbent upon the Government to establish that the added substance may render the article injurious to health.

In subdivision 5 of § 7 of the Food and Drugs Act of 1906 the word "may" is used in its ordinary and usual signification; and if an article of food may not by the addition of a small amount of poisonous substance by any possibility injure the health of any consumer, it may not be condemned under this subdivision of the act.

202 Fed. Rep. 615, affirmed.

THE facts, which involve the construction of subdivi-

sions 4 and 5 of § 7 of the Food and Drugs Act of 1906, are stated in the opinion.

*Mr. Attorney General McReynolds,* with whom *Mr. Francis G. Caffey* was on the brief, for the United States:

The seized flour was adulterated within subd. 5, § 7 of the Food and Drugs Act. *French Silver Dragee Co.* v. *United States,* 179 Fed. Rep. 824; *United States* v. *1,950 Boxes of Macaroni,* 181 Fed. Rep. 427; *United States* v. *Mayfield,* 177 Fed. Rep. 765; *United States* v. *Rosebrock & Co.,* Notice of Judgment, 825; *United States* v. *Koca Nola Co.,* Notice of Judgment, 202; *Friend* v. *Matt,* 68 J. P. 589.

The Circuit Court of Appeals erred in reviewing the weight of evidence as to whether the flour was adulterated within subd. 4 of § 7 of the act.

The bleaching conceals newness and imparts color of better grade and inferior flour is made to resemble patent.

Flour milled from inferior wheat is made to appear as if milled from first-quality.

The Circuit Court of Appeals had no power to review the jury's findings. *Behn* v. *Campbell,* 205 U. S. 403; *Lancaster* v. *Collins,* 115 U. S. 222; *Chicago & North Western Ry. Co.* v. *Ohle,* 117 U. S. 123.

The Court of Appeals was correct in holding that there was no error in submitting to the jury the charges of adulteration under subd. 1 of § 7 of the act.

The Food and Drugs Act is constitutional. *Hipolite Egg Co.* v. *United States,* 220 U. S. 45; *Booth* v. *Illinois,* 184 U. S. 425; *Otis* v. *Parker,* 187 U. S. 606; *Powell* v. *Pennsylvania,* 127 U. S. 678; *Buttfield* v. *Stranahan,* 192 U. S. 470; *United States* v. *Johnson,* 221 U. S. 488; *Shawnee Milling Co.* v. *Temple,* 179 Fed. Rep. 517; *United States* v. *74 Cases Grape Juice,* 181 Fed. Rep. 629; *United States* v. *420 Sacks of Flour,* 180 Fed. Rep. 518; *United States* v.

*Heinle Specialty Co.,* 175 Fed. Rep. 299; *United States* v. *100 Cases of Apples,* 179 Fed. Rep. 985.

*Mr. Edward P. Smith* and *Mr. Bruce S. Elliott,* with whom *Mr. Edward L. Scarritt, Mr. C. J. Smyth* and *Mr. W. C. Scarritt* were on the brief, for respondent:

Congress possesses no police power, and the Food and Drugs Act, if sustained at all, must be sustained on the ground that it is a regulation of commerce between the States. *Crutcher* v. *Kentucky,* 141 U. S. 47; *Lawton* v. *Steele,* 152 U. S. 133; *Gibbons* v. *Ogden,* 9 Wheat. 1; *Hannibal & St. Joe R. R. Co.* v. *Hewson,* 95 U. S. 465; *Wilkinson* v. *Rahrer,* 140 U. S. 545.

The power to make the ordinary regulations of police remains with the individual States and cannot be assumed by the National Government, and in this respect it is not interfered with by the Fourteenth Amendment. *Mugler* v. *Kansas,* 123 U. S. 623; *Plumley* v. *Massachusetts,* 155 U. S. 461; *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S. 650; *United States* v. *Knight,* 156 U. S. 1; *Int. Com. Comm.* v. *Brimson,* 154 U. S. 447; *Employers' Liability Case,* 207 U. S. 463.

The Food and Drugs Act is to be regarded as an act to regulate commerce, and the court erred in charging the jury that the Government need not prove that the flour in question, or foodstuffs made by the use of it, would injure the health of the consumer; that it is the character—not the quantity—of the added substance which is to determine this case.

Congress never intended the statute in question should be construed as the trial court construed it in this instruction to the jury.

In the passage of this act Congress intended the words of this section to be used as above indicated, in their usual and ordinary sense. It was never intended by Congress that this act should ever be construed to mean that the

useful and harmless property of a citizen should, by the methods providing for the prevention of the sale of harmful and injurious foods, be confiscated, condemned and destroyed.  This would be contrary to the policy and spirit of our laws and the fundamental principles of our government.  *Church of Holy Trinity* v. *United States*, 143 U. S. 457; *United States* v. *C. & N. W. Ry. Co.*, 157 Fed. Rep. 618; *Binns* v. *United States*, 194 U. S. 495; *Blake* v. *Natl. City Bank*, 23 Wall. 307; *Wadsworth* v. *Boysen*, 148 Fed. Rep. 771.

The language used in the act in question is not susceptible of the interpretation placed thereon by the trial court.  *Montclam* v. *Ramsdell*, 107 U. S. 147; *Postmaster General* v. *Early*, 6 L. C. P. 147; 12 Wheat. 136.

In order to bring an article of food within its condemnation, it must be shown that its consumption would injure the health of the consumer.

Giving to all the words of the statute, therefore, their plain, usual and ordinary meaning, it is plain that the trial court erroneously construed it.  *French Silver Dragee Co.* v. *United States*, 179 Fed. Rep. 824.

The construction contended for has been sustained by the English courts in construing a similar statute, 38 and 39 Vict., c. 63, § 3.  *Friend* v. *Mapp*, 68 J. P. 589; *Hull* v. *Horsnell*, 68 J. P. 591.

The act as construed by the trial court is arbitrary and an unreasonable interference with the rights of property. *Jew Ho* v. *Williamson*, 103 Fed. Rep. 10.

If the flour did not contain anything which might render it injurious to health, it is wholly without the power of Congress or any other branch of the Government to exclude it from the channels of commerce or to prohibit its sale.

Congress has not undertaken to exclude flour such as this from the markets.  Congress only attempted to exclude from the markets such flour as may be injurious to

health.   The trial court by its instructions forced the condemnation and destruction of this flour, even though it contained nothing which would in any wise render it injurious to health.   This is not the exercise of a legislative power, but is an arbitrary and illegal taking of property which this court has in many cases condemned.   *Powell* v. *Pennsylvania,* 127 U. S. 678; *Mugler* v. *Kansas,* 123 U. S. 623; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1; *Collins* v. *New Hampshire,* 171 U. S. 30; *Lochner* v. *New York,* 198 U. S. 45.

There is no reasonable foundation in this case for holding that it is necessary or appropriate to safeguard the public health or the health of the individuals to destroy and condemn the flour in question.   *State* v. *Layton,* 160 Missouri, 474; *State* v. *Addington,* 12 Mo. App. 219; *State* v. *Fisher,* 52 Missouri, 174; *Toledo* v. *Jacksonville,* 67 Illinois, 37; *River Rendering Co.* v. *Behr,* 77 Missouri, 9; *McConnell* v. *McKillipp,* 71 Nebraska, 712.

The interpretation placed upon the act by the Circuit Court of Appeals is reasonable, gives effect to all the language contained in the act, and is the only interpretation under which its constitutionality can be sustained. *Knowlton* v. *Moore,* 178 U. S. 41; *Collins* v. *New Hampshire,* 171 U. S. 30; *Interstate Drainage Co.* v. *Commissioners,* 158 Rep. Fed. 270.

The statute in question is a penal statute, and as to the rule applicable to the construction of such statutes see *Martin* v. *United States,* 168 Fed. Rep. 198, 201; *United States* v. *Wiltberger,* 5 Wheat. 77; *United States* v. *Germaine,* 99 U. S. 508; *Field* v. *United States,* 137 Fed. Rep. 6; *United States* v. *Lake,* 129 Fed. Rep. 499.

The intent of Congress, as indicated by the title of the act, was to make the condition of the food the determining factor of adulteration.

The principle of construction adopted by the Circuit Court of Appeals is sustained in numerous decisions.   See

*Maillard* v. *Lawrence*, 16 How. 251; *Levy* v. *M'Cartee*, 6 Pet. 110; *Parsons* v. *Hunter*, 2 Sumner, 422; *Bernier* v. *Bernier,* 147 U. S. 246; *Washington Market Co.* v. *Hoffman*, 101 U. S. 115; *United States* v. *Fisher*, 109 U. S. 145; *Lake Superior Canal Co.* v. *Cunningham*, 155 U. S. 380; *Rhodes* v. *Iowa*, 170 U. S. 423; *Lake County* v. *Rollins*, 130 U. S. 670; *Hamilton* v. *Rathbone*, 175 U. S. 421; *Swarts* v. *Seigel*, 117 Fed. Rep. 18; *Glover* v. *United States*, 164 U. S. 298; *Harless* v. *United States* (C. C. A.), 88 Fed. Rep. 102.

The construction of the law contended for by the Government would render contraband many admittedly harmless articles of food. Other well known articles of food, admittedly harmless, contain nitrites.

The Circuit Court of Appeals committed no error in sustaining respondent's contention that there was no substantial evidence to support the charge that the seized flour was colored in a manner whereby damage or inferiority is concealed. *Naylord & Gerrard* v. *Alsop Process Co.*, 168 Fed. Rep. 911, 915.

By leave of court, *Mr. Ralph S. Rounds* filed a brief as *amicus curiæ*.

MR. JUSTICE DAY delivered the opinion of the court.

The petitioner, the United States of America, proceeding under § 10 of the Food and Drugs Act (June 30, 1906, c. 3915, 34 Stat. 768, 771), by libel filed in the District Court of the United States for the Western District of Missouri, sought to seize and condemn 625 sacks of flour in the possession of one Terry, which had been shipped from Lexington, Nebraska, to Castle, Missouri, and which remained in original, unbroken packages. The judgment of the District Court, upon verdict, in favor of the Government, was reversed by the Circuit Court of Appeals for the Eighth Circuit (202 Fed. Rep. 615), and this writ of certiorari is to review the judgment of that court.

The amended libel charged that the flour had been treated by the "Alsop Process," so called, by which nitrogen peroxide gas, generated by electricity, was mixed with atmospheric air and the mixture then brought in contact with the flour, and that it was thereby adulterated under the fourth and fifth subdivisions of § 7 of the act, namely, (1) in that the flour had been mixed, colored and stained in a manner whereby damage and inferiority were concealed and the flour given the appearance of a better grade of flour than it really was, and (2) in that the flour had been caused to contain added poisonous or other added deleterious ingredients, to-wit, nitrites or nitrite reacting material, nitrogen peroxide, nitrous acid, nitric acid and other poisonous and deleterious substances which might render the flour injurious to health. The libel also charged that the flour was adulterated under the first subdivision of § 7, and was misbranded; but the Government does not urge these features of the case here. The verdict was broad enough to cover the charge under the first subdivision of § 7, but in the view we take of the case as to the instruction of the court under subdivision 5 it need not be noticed.

The Lexington Mill & Elevator Company, the respondent herein, appeared, claiming the flour, and answered the libel, admitting that the flour had been treated by the Alsop Process, but denying that it had been adulterated and attacking the constitutionality of the act.

A special verdict to the effect that the flour was adulterated was returned and judgment of condemnation entered. The case was taken to the Circuit Court of Appeals upon writ of error. The respondent contended that, among other errors, the instructions of the trial court as to adulteration were erroneous and that the act was unconstitutional. The Circuit Court of Appeals held that the testimony was insufficient to show that by the

bleaching process the flour was so colored as to conceal
inferiority and was thereby adulterated, within the
provisions of subdivision 4. That court also held—and
this holding gives rise to the principal controversy here—
that the trial court erred in instructing the jury that the
addition of a poisonous substance, in any quantity, would
adulterate the article, for the reason that "the possibility
of injury to health due to the added ingredient and in the
quantity in which it is added, is plainly made an essential
element of the prohibition." It did not pass upon the
constitutionality of the act, in view of its rulings on the
act's construction.

The case requires a construction of the Food and Drugs
Act. Parts of the statute pertinent to this case are:

"SEC. 7. (34 Stat. 769.) That for the purposes of this
act an article shall be deemed to be adulterated: . . .

"In the case of food:

"First. If any substance has been mixed and packed
with it so as to reduce or lower or injuriously affect its
quality or strength. . . .

"Fourth. If it be mixed, colored, powdered, coated, or
stained in a manner whereby damage or inferiority is
concealed.

"Fifth. If it contain any added poisonous or other
added deleterious ingredient which may render such
article injurious to health. . , .

*    *    *    *    *    *    *    *

"SEC. 10. (34 Stat. 771.) That any article of food,
drug, or liquor that is adulterated or misbranded within
the meaning of this act, and is being transported from one
State, Territory, district, or insular possession to another
for sale, or, having been transported, remains unloaded,
unsold, or in original unbroken packages, . . . shall
be liable to be proceeded against in any district court of
the United States within the district where the same is
found, and seized for confiscation by a process of libel for

condemnation. And if such article is condemned as being adulterated or misbranded, or of a poisonous or deleterious character, within the meaning of this act, the same shall be disposed of by destruction or sale, as the said court may direct."

Without reciting the testimony in detail it is enough to say that for the Government it tended to show that the added poisonous substances introduced into the flour by the Alsop Process, in the proportion of 1.8 parts per million, calculated as nitrogen, may be injurious to the health of those who use the flour in bread and other forms of food. On the other hand, the testimony for the respondent tended to show that the process does not add to the flour any poisonous or deleterious ingredients which can in any manner render it injurious to the health of a consumer. On these conflicting proofs the trial court was required to submit the case to the jury. That court, after stating the claims of the parties, the Government insisting that the flour was adulterated and should be condemned if it contained any added poisonous or other added deleterious ingredient of a kind or character which was capable of rendering such article injurious to health; the respondent contending that the flour should not be condemned unless the added substances were present in such quantity that the flour would be thereby rendered injurious to health, gave certain instructions to the jury. Part of the charge, excepted to by the respondent, reads:

"The fact that poisonous substances are to be found in the bodies of human beings, in the air, in potable water, and in articles of food, such as ham, bacon, fruits, certain vegetables, and other articles, does not justify the adding of the same or other poisonous substances to articles of food, such as flour, because the statute condemns the adding of poisonous substances. Therefore the court charges you that the Government need not prove that this flour or food-stuffs made by the use of it would injure

the health of any consumer. It is the character—not the quantity—of the added substance, if any, which is to determine this case."

On the other hand the respondent insisted that the law is, and requested the court to charge the jury:

"That the burden is upon the prosecution to prove the truth of the charge in the libel, that by the treatment of the flour in question by the said Alsop Process it has been caused to contain added poisonous or other added deleterious ingredients, to-wit, nitrites or nitrite reacting material, which may render said flour injurious to health.

"And in this connection you are further instructed that it is incumbent upon the Government to prove that any such added poisonous or other added deleterious ingredients, if any contained in said flour, are of such a character and contained in the flour seized in such quantities, conditions and amounts as may render said flour injurious to health, and unless you find that all of such facts are so proven you cannot find against the claimant or condemn the flour in question under that charge in the libel, and if you fail to so find your verdict upon that count or charge in the libel must be in favor of the claimant or defendant.

\*          \*          \*          \*          \*          \*          \*          \*

"The law does not prohibit the adding of nitrites or nitrite reacting material to flour, and a jury cannot find for the Government or against the claimant, even if it be shown that nitrites or nitrite reacting material was added to the flour in question, unless they believe from a preponderance of the evidence that such addition, if any, rendered said flour injurious to the health of those who might consume the bread or other foods made from said flour."

It is evident from the charge given and requests refused that the trial court regarded the addition to the flour of any poisonous ingredient as an offense within this statute, no

matter how small the quantity, and whether the flour might or might not injure the health of the consumer. At least such is the purport of the part of the charge above given, and if not correct, it was clearly misleading, notwithstanding other parts of the charge seem to recognize that in order to prove adulteration it is necessary to show that the flour may be injurious to health. The testimony shows that the effect of the Alsop Process is to bleach or whiten the flour and thus make it more marketable. If the testimony introduced on the part of the respondent was believed by the jury they must necessarily have found that the added ingredient, nitrites of a poisonous character, did not have the effect to make the consumption of the flour by any possibility injurious to the health of the consumer.

The statute upon its face shows, that the primary purpose of Congress was to prevent injury to the public health by the sale and transportation in interstate commerce of misbranded and adulterated foods. The legislation, as against misbranding, intended to make it possible that the consumer should know that an article purchased was what it purported to be; that it might be bought for what it really was and not upon misrepresentations as to character and quality. As against adulteration, the statute was intended to protect the public health from possible injury by adding to articles of food consumption poisonous and deleterious substances which might render such articles injurious to the health of consumers. If this purpose has been effected by plain and unambiguous language, and the act is within the power of Congress, the only duty of the courts is to give it effect according to its terms. This principle has been frequently recognized in this court. *Lake County* v. *Rollins*, 130 U. S. 662, 670:

"Where a law is expressed in plain and unambiguous terms, whether those terms are general or limited, the legislature should be intended to mean what they have

plainly expressed, and consequently no room is left for construction."

*Hamilton* v. *Rathbone,* 175 U. S. 414, 421:

"The cases are so numerous in this court to the effect that the province of construction lies wholly within the domain of ambiguity, that an extended review of them is quite unnecessary."

Furthermore all the words used in the statute should be given their proper signification and effect; *Washington Market Co.* v. *Hoffman,* 101 U. S. 112, 115:

"We are not at liberty," said Mr. Justice Strong, "to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgment, sec. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word, shall be superfluous, void, or insignificant.' This rule has been repeated innumerable times."

Applying these well-known principles in considering this statute, we find that the fifth subdivision of § 7 provides that food shall be deemed to be adulterated: "If it contain any added poisonous or other added deleterious ingredient *which may render such article injurious to health."* The instruction of the trial court permitted this statute to be read without the final and qualifying words, concerning the effect of the article upon health. If Congress had so intended the provision would have stopped with the condemnation of food which contained any added poisonous or other added deleterious ingredient. In other words, the first and familiar consideration is that, if Congress had intended to enact the statute in that form, it would have done so by choice of apt words to express that intent. It did not do so, but only condemned food containing an added poisonous or other added deleterious ingredient when such addition might render the article of food in-

jurious to the health.  Congress has here, in this statute, with its penalties and forfeitures definitely outlined its inhibition against a particular class of adulteration.

It is not required that the article of food containing added poisonous or other added deleterious ingredients must affect the public health, and it is not incumbent upon the Government in order to make out a case to establish that fact.  The act has placed upon the Government the burden of establishing, in order to secure a verdict of condemnation under this statute, that the added poisonous or deleterious substances must be such as may render such article injurious to health.  The word "may" is here used in its ordinary and usual signification, there being nothing to show the intention of Congress to affix to it any other meaning.  It is, says Webster, "an auxiliary verb, qualifying the meaning of another verb, by expressing ability, . . ., contingency or liability, or possibility or probability."  In thus describing the offense Congress doubtless took into consideration that flour may be used in many ways, in bread, cake, gravy, broth, etc.  It may be consumed, when prepared as a food, by the strong and the weak, the old and the young, the well and the sick; and it is intended that if any flour, because of any added poisonous or other deleterious ingredient, may possibly injure the health of any of these, it shall come within the ban of the statute.  If it cannot by any possibility, when the facts are reasonably considered, injure the health of any consumer, such flour, though having a small addition of poisonous or deleterious ingredients, may not be condemned under the act.  This is the plain meaning of the words and in our view needs no additional support by reference to reports and debates, although it may be said in passing that the meaning which we have given to the statute was well expressed by Mr. Heyburn, chairman of the committee having it in charge upon the floor of the Senate (Congressional Record, vol. 40, pt. 2, p. 1131):

"As to the use of the term 'poisonous,' let me state that everything which contains poison is not poison. It depends on the quantity and the combination. A very large majority of the things consumed by the human family contain, under analysis, some kind of poison, but it depends upon the combination, the chemical relation which it bears to the body in which it exists as to whether or not it is dangerous to take into the human system."

And such is the view of the English courts construing a similar statute. The English statute provides (§ 3, of the Sale of Food and Drugs Act, 1875):

"No person shall mix, color, . . . or order or permit any other person to mix, color, . . . any article of food with any ingredient or material so as to render the article injurious to health."

That section was construed in *Hull* v. *Horsnell*, 68 J. P. 591, which involved preserved peas, the color of which had been retained by the addition of sulphate of copper, charged to be a poisonous substance and injurious to health. There was a conviction in the lower court. Lord Alverstone, C. J., in reversing and remitting the case on appeal, said:

"In my opinion, if the justices convicted the appellant of an offence under § 3 of the Sale of Food and Drugs Act, 1875, on the ground that the ingredient mixed with the article of food was injurious to health,—that the sulphate of copper was injurious to health, and not on the ground that the peas by reason of the addition of sulphate of copper were rendered injurious to health, the conviction is clearly wrong. To constitute an offence under the latter part of § 3 the article of food sold must, by the addition of an ingredient, be rendered injurious to health. All the circumstances must be examined to see whether the article of food has been rendered injurious to health."

We reach the conclusion that the Circuit Court of Appeals did not err in reversing the judgment of the Dis-

trict Court for error in its charge with reference to subdivision five of § 7.

The Circuit Court of Appeals reached the conclusion that there was no substantial proof to warrant the conviction under the fourth subdivision of § 7, that the flour was mixed, colored and stained in a manner whereby damage and inferiority was concealed. As the case is to be retried to a jury, we say nothing upon this point.

As to the objection on constitutional grounds, it is not contended that the statute as construed by the Circuit Court of Appeals and this court is unconstitutional.

It follows that the judgment of the Circuit Court of Appeals reversing the judgment of the District Court must be affirmed, and the case remanded to the District Court for a new trial.

*Affirmed.*