WEEKS v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 13, 1915.)

No. 244.

**1. FOOD ☞6—SALE OF ARTICLES INJURIOUS TO HEALTH—STATUTORY PROVISIONS—"ADULTERATED."**

A seller of an article of food labeled "Grain Alcohol Varnish," and composed of shellac, containing arsenic, dissolved in alcohol, for use for glazing candy, with knowledge of the use, may be convicted of violating Food and Drugs Act June 30, 1906, c. 3915, § 7 (Comp. St. 1913, § 8723), declaring that an article of food is "adulterated" where it contains any added ingredients which may render the article injurious to health, though all shellac imported into the United States contains the added arsenic, and though the seller supposed that the amount of arsenic consumed with varnished candy would be too minute to injure any one.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 6; Dec. Dig. ☞6.

For other definitions, see Words and Phrases, First and Second Series, Adulterate.

What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

**2. CRIMINAL LAW ☞1159—WRIT OF ERROR—VERDICT—CONCLUSIVENESS.**

A conviction justified by evidence, though conflicting, will not be disturbed on writ of error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3074–3083; Dec. Dig. ☞1159.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon writ of error from a judgment of conviction of violation of the Pure Food and Drugs Act of June 30, 1906.

Walter Jeffreys Carlin, of New York City, for plaintiff in error.

H. Snowden Marshall, U. S. Atty., and Robert P. Stephenson, Asst. U. S. Atty., both of New York City.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. A much simpler case is here presented than that considered in action No. 1, opinion in which is filed herewith, 224 Fed. 64, —— C. C. A. ——. There is but one information in a single count. Concededly defendant shipped an article of food labeled "Grain Alcohol Varnish"; it was shellac dissolved in alcohol, and was used for a glazing on cheap candies. Shellac is a resinous material derived from a secretion caused by an insect biting the bark of certain trees in India and Southern Asia. This resinous material is separated from the twigs and other refuse material by being warmed in bags. Arsenic is added to it for the purpose of brightening its natural orange color, making it, in the opinion of the trade, more desirable. All shellac imported into this country during the year in question contains this added article; defendant so concedes. The shellac is dissolved in alcohol to produce the varnish; no arsenic is added here.

[1, 2] The act provides (section 7) that an article of food is adulterated if it "contain any added poisonous or other added deleterious ingredient which may render such article injurious to health." The amount of this arsenic which could possibly be consumed by a person eating the candy glazed with the varnish would be minute. The only question is: Was there sufficient arsenic in the varnish to make it an article which "may be injurious to health"?

Upon this point there was conflicting testimony. In accordance with the holding of the Supreme Court in U. S. v. Lexington Mill Co., 232 U. S. 399, 34 Sup. Ct. 337, 58 L. Ed. 658, the question whether the added ingredient would "reasonably have a tendency to injure health" was left to the jury. We see no reason to disturb their finding; it makes no difference whether the arsenic was added to the shellac, or to the varnish, nor whether it was added by the defendant, or by some one else. He testified with commendable frankness that he understood at the time that one "could not buy shellac commercially—I mean outside of a laboratory—that was arsenic free." He supposed undoubtedly that the amount consumed with varnished candy would be too minute to injure any one. Of course, he could sell this varnish, with its added arsenic, for use in the arts; but he admitted, with entire frankness, that he sold it to be used in glazing confectionery. We regret to have to sustain a conviction where the defendant has been so entirely frank and honest in giving his testimony, and had no reason to suppose he was likely to injure any one's health by selling his varnish for the indicated purpose; but intent so to do is not an element of the offense charged, and the evidence as to what effect the added arsenic may have was such that this question had to go to the jury for decision. Had they decided that question contrary to the contention of the government experts, we certainly could not set their decision aside; nor can we do so when they find such contention persuasive. We are not the triers of the facts.

It seems unnecessary to discuss various technical points which have been argued. We cannot see that it makes any difference whether the package shipped was labeled "Grain Alcohol Varnish," or "White Shellac Varnish, Grain Alcohol." It is proved that shellac varnish was sent by defendant to the candy manufacturer in Providence, R. I., and that what the government experts tested was a sample from the can. We do not understand that defendant disputes the fact that he sent the can.

Judgment affirmed.