## FEDERAL SUPREME COURT
### Concluded

2. There is a fatal lack of necessary parties. It is only by failure of the twelve exporting companies to continue the exportation of gas that the plaintiffs and other consumers or the distributing companies in Pa. or Ohio can be injured. They should be parties.

3. This court, sitting in equity, should not lend its aid to enable W. Va. public service corporations to discriminate against W. Va. consumers in the interest of Ohio and Pa. consumers.

Attorneys—J. W. Davis of N. Y. City, J. G. Price and F. T. Eagleson of Columbus, O., R. G. Altizer of Charleston, W. Va., and E. E. Corn of Ironton, O., for State of Ohio; G. M. Hoffheimer of Clarksburg, W. Va., E. T. England and F. O. Blue of Charleston, W. Va., and P. P. Steptoe of Clarksburg, W Va., for the State of W. Va.; G. E. Alter of Pittsburgh, W. I. Schaffer of Chester, Pa., and A. L. Weil of Pittsburgh, for Pa.

---

No. 655

POHL v. STATE OF OHIO
and
BOHNING v. STATE OF OHIO

U. S. Supreme Court
Nos. 181, 182. Decided June 4, 1923

### 105. CONSTITUTIONAL LAW.

Statute relative to teaching of foreign languages held unconstitutional.

MR. JUSTICE McREYNOLDS.:

#### Epitomized Opinion

Bohning and Pohl, of St. John's Evangelical Congregational School, Gerfield Heights, Cuyahoga County, Ohio, were severally convicted (102 OS. 474) of violating 108 Ohio Laws, p. 614, which prohibits the teaching of German to pupils below the eights grade in elementary, private and parochial schools and provides that instruction shall be in the English language. Error to the Supreme Court of Ohio. The U. S. Supreme Court in reversing the judgment hald.

1. This act is unconstitutional as it violates amendment 14 of the U. S. Constitution providing that no state shall deprive any person of liberty without due process of law. 43 Supreme Court 625.

MR. JUSTICE HOLMES held:

1. The only question is whether the means adopted deprives teachers of the liberty secured to them by the 14th amendment. Youth is the time when familiarity with a language is established and if there are sections in the state where a child would hear Polish, French or German spoken at home, it is not unreasonable to provide that in his early years he shall hear and speak only English at school. No one would doubt that a teacher might be forbidden to teach many things and the only criterion of his liberty under the Constitution is whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat. 251 U. S. 264. But the Ohio Statute expressly prohibiting the teaching of the German language is unconstitutional.

Attorneys—T. S. Hogan and F. Davis, for Bohning and Pohl; E. J. Thobaben, for State.

## COURT OF APPEALS of U. S.
### CINCINNATI

---

No. 656
DOUGLAS PACKING CO v. U. S.
U. S. Appeals, 6th Circuit
No. 3833. Decided April 3, 1923
Rehearing Denied June 29, 1923

195. FOOD LAWS.

Not misbranded if identical thing named. Burden of proving (172) misbranding is on government. Vinegar manufactured from evaporated apples to which water is restored before pressing held not misbranding as apple cider vinegar.

DONAHUE, C. J.:

#### Epitomized Opinion

U. S. filed a libel in District Court, Cleveland, for seizure and condemnation of 95 barrels of alleged apple vinegar labeled "Excelsior Brand Apple Cider Vinegar, Made from Selected Apples," charging this vinegar is adulterated and misbranded in violation of Food and Drug Act of June 30, 1906. Douglas Packing Co., manufacturer and owner of this vinegar intervened, denied that it was adulterated or misbranded and asked restitution. Written waiver of trial by jury was filed and the case was submitted to the court upon an agreed statement of facts. The trial court found that vinegar was not adulterated, but was misbranded and ordered its condemnation and forfeiture. Claimant brings error. Agreed statement of facts disclosed that Douglas Packing Co. is engaged in the manufacture of apple cider and apple cider vinegar, that during the apple season—Sept. 25 to Dec. 15—sound, mature, unevaporated apples are used by it in the manufacture of its products. For balance of year evaporated apples of like quality are used. Result of evaporation process is removal of 80 per cent of water contained in natural fruit.

It is admitted if any other constituents are removed by evaporation, amount thereof is so negligible that science of chemistry is unable to determine the fact. When evaporated apples are used substantially same amount of pure water is added to evaporated apples as was removed. In evaporating process, small quantities of sulphur fumes are used to prevent rot, fermentation and decomposition. This is wholly removed by addition of barium carbonate. The cider obtained when analyzed is the same as that made from unevaporated apples, excepting a trace of barium, and this barium does not render the product injurious or deleterious to health. The Food and Drug Act provides an article is adulterated if any substance has been mixed or packed with it so as to injuriously affect its quality or strength and is misbranded if it be labeled or branded so as to deceive or mislead the purchaser, or if it is offered for sale under the distinctive name of another article. The Circuit Court of Appeals in reversing the judgment of the District court held:

1. The trace of barium does not constitute adulteration under the Food and Drug Act, either of Ohio or U. S.

2. Conservation of our food products is second in importance only to demand for pure and unadulterated food. An efficient and harmless method of preserving fruit is in the direct interest of the public. If method has accomplished that object without change of product it should be encouraged rather than condemned. The purpose of the Food and Drug Act is to prevent injury to public health by the sale and transportation in interstate commerce of misbranded and adulterated foood, 232 U. S. 399, and the burden is upon the government to prove this violation. This cider is not misbranded within the meaning of the Food and Drug Act.

3. The lower court based its opinion in part upon judicial knowledge that nothing is apple cider unless it is pressed from fresh apples. This was an inference wholly inconsistent with the facts here conceded.

Attorneys—L. C. Spieth (White, Cannon and Spieth on brief), for Douglas Packing Co.; E. S. Wertz and G. J. Pilliod, for U. S.; Judson Harmon and G. Hoadly, amici curise.

---

No. 657

B. & O. R. R. CO. v. DE LEONE

U. S. Appeals, 6th Circuit

No. 3750. Decided May 8, 1923

259. MUNICIPAL LAW.

Effect of ordinance regulating speed of train in interstate commerce. Ordinance regulating speed of automobiles (47) and R. R. trains (311) held not violation of statute requiring ordinance to contain only one subject. Negligence (268)—Contributory negligence of truck driver at R. R. crossing held question for jury (367).

DONAHUE, C. J.:

Epitomized Opinion

DeLeone, adm. of estate of Mandalia, sued R. R. Co. in Portage County Common Pleas for causing wrongful death of Mandalia. On petition of R. R. ause was removed to U. S. District Court. Mendalia as driving an automobile truck south on Chestnut street in Ravenna, Ohio. This street is crossed at grade at right angles by two main tracks and two switch tracks of B. &. O. R. R. R. R. Co.'s eastbound passenger train No. 10 collided at this crossing with truck driven by deceased. causing injuries which resulted in his death.

Petition averred that R. R. Co. was negligent in failing to sound whistle or bell and in operating its train over this crossing at an excessive rate of speed in violation of an ordinance of Ravenna. R. R. Co. nied engligence and averred Mendalia was guilty of contributory negligence. R. R. Co.'s requested charge, that train was engaged in interstate commerce and carrying U. S. mail, and Ravenna ordinance is undue burden on interstate commerce and violation thereof by such a train was not negligence, was refused, and exceptions noted. Judy returned a verdict for plaintiff, motion for a new trial was overruled, and judgment entered on the verdict. R. R. prosecuted error. In affirming the judgment the Court of Appeals held:

1. An ordinance regulating the speed of trains through a municipality enacted under the exercise of police power which conforms to the limitations prescribed by the legislature, is presumptively reasonable and valid and not in conflict with the state or federal constitution. But the presumption may be rebutted an din order to overcome such presumption a R. R. Co. must affirmatively show its unreasonableness, 109 O. S. 471 and 178. The R. R. Co. has not challenged the reasonableness of the speed limit fixed by the ordinance.

2. This ordinance which regulates the speed of automobiles and R. R. Trains is not a violation of GC. 4226, requiring that an ordinance shall contain but one subject, because it is an ordinance regulating speed and the fact that it regulates the speed of more than one vehicle is of no importance. It might have included a dozen other vehicles, if there were such vehicles requiring regulation. 75 O. S. 413.

3. The evidence in this case disclosed such a condition of the crossing, particularly in reference to obstructions to view, which taken in connection with the evidence in relation to the speed at which this train was traveling, that the alleged contributory negligence of the deceased does not appear therefrom as a matter of law, but on the contrary was a question for the determination of the jury. 94 O. S. 93, 103; 103 O. S. 471, 482.

Attorneys—C. F. Smith (Harrington, Deford, Huxley & Smith, on brief, for R. R.; L. H. Winch (Payer, Winch, Minshall & Karch, on brief), for De Leone.

---

# DISTRICT COURTS of U. S.

No. 658

U. S. v. SALBERG

U. S. District Court, N. D. Ohio, E. D.
No. 7348. Decided February 13, 1923

341. STATUTES.

Indictment under Selective Service Act. Joint resolution of Congress held only an expression of opinion and not equivalent to enactment of law. Constitutional Law (233).—Legislature (105) cannot determine meaning of existing law.

WESTENHAVER, D. J.:

Epitomized Opinion

Salberg was indicted for failure to register as required by the Selective Service Act of May 18, 1917, on June 5, 1917. The Selective Service Act makes it an offense for any person thus required to register to wilfully fail or refuse to present himself for registration or to submit thereto as required by the act. The offense is declared to be a misdemeanor punishable by imprisonment for not more than one year. No limitation upon a prosecution is provided by that act. The Statute of Limitations, Secc. 1708 U. S. Comp. Stat., as amended by Act Nov. 17, 1921, provides no person shall be prosecuted, tried or punished for any offense unless didictment is found within three years after such offense is committed. The amendment extended the period of limitation to six years with respect to offenses involving the defrauding or attempting to defraud the U. S. of any agency thereof. It also provides that it shall not apply to offenses already barred by the provisions of existing laws. The indictment of Salberg was not found until Dec. 20, 1922. The three year period expired June, 1920. The U. S. pleaded a joint resolution of Congress approved March 8, 1922. This resolution declared that certain acts and resolutions