## NINETY–FIVE BARRELS, MORE OR LESS, APPLE CIDER VINEGAR
### (Douglas Packing Co., Claimant), v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit.    April 3, 1923.   Rehearing Denied
June 29, 1923.)

No. 3835.

**1. Food ⊸15—Not "misbranded," if identical thing named.**

If an article of food is the identical thing indicated by the brand, it is not "misbranded," within Food and Drug Act June 30, 1906, § 8 (Comp. St. § 8724), and the method of its manufacture is immaterial.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Misbrand—Misbranding.]

**2. Food ⊸15—Statute against misbranding to be construed with reference to its purpose.**

The primary purpose of the Food and Drug Act is to prevent injury to the public health, and while the test of misbranding of a food product, under Food and Drug Act June 30, 1906, § 8 (Comp. St. § 8724), is whether it is true to name, there should not be overstrictness in applying this test in a case where the public health cannot possibly be jeopardized.

**3. Food ⊸24—Burden of proving misbranding on the government.**

In a proceeding under Food and Drug Act June 30, 1906, § 10 (Comp. St. § 8726), for forfeiture of a food product for misbranding, the burden is on the government to establish by the evidence not merely a technical, but a substantial, violation of the act, which may render the article injurious to health, or mislead the public to its prejudice or harm, or induce the purchase of a different article than the article desired.

**4. Food ⊸15—Vinegar manufactured from evaporated apples, to which the water is restored before pressing, held not misbranded as "apple cider vinegar."**

Claimant manufactures vinegar from sound and mature apples, free from rot and ferment, from which, for the purpose of preservation, 80 per cent. of the water had been evaporated and an equal amount of pure water added before pressing. The liquid obtained by the pressing is identical in taste, substance, and chemical test with cider pressed from unevaporated apples. If any constituent element of the apple is removed by the evaporating process, it is so small that its absence is not shown by chemical test. Vinegar so made has been extensively sold in the market for many years as "apple cider vinegar." *Held,* that such name is not a misbrand.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Proceeding by the United States by libel against ninety-five barrels, more or less, apple cider vinegar, the Douglas Packing Company, claimant. Judgment of forfeiture, and claimant brings error. Reversed and remanded.

L. C. Spieth, of Cleveland, Ohio (White, Cannon & Spieth, of Cleveland, Ohio, on the brief), for plaintiff in error.

E. S. Wertz, U. S. Atty., and Gerard J. Pilliod, Asst. U. S. Atty., both of Cleveland, Ohio.

Judson Harmon and Geo. Hoadly, both of Cincinnati, Ohio, amici curiæ.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DONAHUE, Circuit Judge.  The United States filed a libel in the District Court for the seizure and condemnation of 95 barrels of alleged apple cider vinegar, labeled "Excelsior Brand Apple Cider Vinegar Made from Selected Apples," charging that this vinegar is both adulterated and misbranded in violation of the Food and Drug Act of June 30, 1906 (Comp. St. §§ 8717–8728).  The Douglas Packing Company, the manufacturer and owner of this vinegar, intervened, and denied that it was either adulterated or misbranded, and asked restitution.  A written waiver of trial by jury was filed and the case was submitted to the court upon an agreed statement of facts.  The trial court found that the vinegar was not adulterated, but was misbranded, in violation of general paragraph of section 8, and subparagraphs 1, 2, and 4, as to foods of section 8 of the Food and Drug Act of June 30, 1906 (Comp. St. § 8724), as charged in said libel, and ordered its condemnation and forfeiture as provided by that act.

It appears from the agreed statement of fact that claimant, the Douglas Packing Company, is engaged in the manufacture of apple cider and apple cider vinegar; that during the apple season, from about September 25th to December 15th of each year, sound, mature, unevaporated apples are used by it in the manufacture of its products, and for the balance of the year evaporated apples of like quality are used.  The principal result of the evaporation process is the removal of 80 per cent. of the water contained in the natural fruit.  While it is not admitted that there are no other constituents of the apple removed by this process, yet it is admitted in effect that, if any other constituents are removed by evaporation, the amount thereof is so negligible that the science of chemistry is unable to determine that fact.  When the apple season is over, and the evaporated apples are used by the claimant in the manufacture of its products, substantially the same amount of pure water is added to the evaporated apples that was removed by the evaporating process.  In all other respects the claimant employs the same receptacles, equipment, and process as in the manufacture from the unevaporated apple.

In the evaporating process small quantities of sulphur fumes are used to prevent rot, fermentation, and decomposition.  This is wholly removed therefrom by the addition of barium carbonate, or some other chemical that eliminates itself and the sulphur compound by precipitation.  After fining (clarifying) and filtration the cider or liquid obtained from the evaporated apple, upon chemical analysis, will give results similar to those obtained by chemical analysis of apple cider made from unevaporated apples, except a trace of barium—in other words, an amount too small to be quantitively measured.  No claim is made that this trace of barium renders the product injurious or deleterious to health, and, except for this trace of barium, the vinegar made from this cider or liquid obtained from the evaporated apple is similar in taste and composition to the vinegar made from the cider of the unevaporated apples.

It was evidently the purpose and intent of the government and the claimant, in subscribing to the agreed statement of facts, to eliminate from consideration all unimportant matters and confine the issues to

important basic questions affecting the substantial rights of the parties. These issues must be determined solely upon consideration of the facts admitted, regardless of the possibility that facts might have been established by evidence at variance therewith and more in harmony with a supposed public opinion upon this subject.

The libel charges that this vinegar is adulterated in violation of paragraphs 1 and 2, under Food, of section 7 of the Food and Drug Act of June 30, 1906 (Comp. St. § 8723), which paragraphs read as follows:

(1) "If any substance has been mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength."

(2) "If any substance has been substituted wholly or in part for the article."

It is clear that this trace of barium, which is admitted to be neither injurious or deleterious, does not constitute adulteration within the meaning of either of the paragraphs of section 7 of the Food and Drug Act above quoted. U. S. v. Lexington Mill & Elevator Co., 232 U. S. 399, 34 Sup. Ct. 337, 58 L. Ed. 658, L. R. A. 1915B, 774. The question whether some other substance has been substituted wholly or in part for the article known as "apple cider vinegar," in violation of the second paragraph of this section, will be considered and discussed in connection with the charge of misbranding.

It is insisted, however, upon the part of the government, that the barrels are also labeled "Guaranteed to Comply with all Pure Food Laws"; that this means, not only the federal Food and Drug Act, but also the pure food laws of the state where this vinegar is intended to be sold at retail, after it passes beyond the jurisdiction of the federal authorities. The libel, however, is based solely upon the adulteration and misbranding of this vinegar in violation of the federal Food and Drug Act. While it is alleged that the vinegar was shipped from Fairport, N. Y., to Fisher Bros., Cleveland, Ohio, there is no allegation that the vinegar is to be sold in the state of Ohio, or that it is adulterated or misbranded in violation of the Ohio statutes, nor is there anything in the agreed statement of facts in reference to its final destination and place of sale at retail.

If, however, it were conceded that this libel could be construed as charging that this vinegar is adulterated or misbranded in violation of the terms and provisions of the Ohio law, the same result must follow. Substantially the same questions are presented under the Ohio statute (section 5789, G. C.), in reference to misbranding, as are presented under the federal Food and Drug Act which questions will be discussed later in this opinion. Upon the question of adulteration under the Ohio law, no claim is made that this vinegar contains less than 4 per cent. by weight of absolute acetic acid, nor is a mere trace of barium, which is neither deleterious nor injurious to health, a "foreign substance" within the contemplation, intent, or purpose of section 5786 of the General Code of Ohio. U. S. v. Lexington Mill & Elevator Co., supra.

[1] Section 8 of the Food and Drug Act provides, among other things, that in a case of foods an article shall be deemed to be misbranded if it be labeled or branded so as to deceive or mislead the purchaser, or it be an imitation of, or offered for sale under the dis-

tinctive name of, another article. The important question in each case is whether the product is the identical thing that its brand indicates. If it is the identical thing indicated by the brand, the method of its manufacture, regardless of the information of the general public upon that subject, is wholly unimportant.

It appears from the agreed statement of facts that the cider from which this vinegar was made was manufactured from apples and from nothing else. The process of its manufacture differed from the usual method only in so far as necessary to preserve the fruit. This was accomplished by the evaporation process above described. When a quantity of water equal to the amount evaporated is added to the evaporated apples and pressed therefrom, it combines with and carries the solvent properties of the apples just the same as in the original state, or if not exactly and identically the same, so near as to defy the science of chemistry to discover the difference. This is the full scope and effect of the dehydrating process as appears by the agreed statement of fact.

The conservation of our food products is of some concern to the public, and, perhaps, second in importance only to the demand for pure and unadulterated food. It is probably true, that the apple season is altogether too short for the economical manufacturing of the crop, during the season, into cider vinegar in sufficient quantities for public consumption. Therefore an efficient and harmless method of preserving the fruit until it can be used for this purpose is in the direct interest of the public, and if this method has accomplished that object without change in the product, it should be encouraged rather than condemned.

If, after cider has been pressed from unevaporated apples, a large amount of the water that is a constituent part thereof is evaporated therefrom, and later an equal amount of water is added thereto, the constituent elements of cider yet remains, and it would hardly be contended that vinegar made therefrom would not be apple cider vinegar; yet, so far as the agreed statement of facts discloses, there is substantially no difference between the evaporation of water from the cider and evaporating the water from the apple before the cider is pressed therefrom. The water is not all evaporated, leaving only a hard dried fruit, as may approximately result from sun drying; 20 per cent. of the water remains, and this continues to be the condensed juice of the fruit, ready for restoration by pure water dilution to its original volume. This was the underlying idea of the Allen patent, No. 268,972, for a dry mince pie compound, in which it appears that the water was evaporated from the apple for the purpose, as stated by the patentee, "so that I have the cider in my compound without useless water, which may be added when the consumer wishes to use it." Dougherty v. Doyle, 63 Fed. 475, 11 C. C. A. 298.

It must also be assumed that legislation upon any subject has some definite and substantial object in view, and is not in furtherance of technical purposes or barren idealities. It was declared by the Supreme Court in U. S. v. Lexington Mill & Elevator Co., 232 U. S. 399, 34 Sup. Ct. 337, 58 L. Ed. 658, L. R. A. 1915B, 774, that the primary purpose of Congress in enacting the Food and Drug Act of 1906 was

to prevent injury to the public health by the sale and transportation in interstate commerce of misbranded and adulterated food. That case involved the manufacture of flour by a new process, called the "Alsop process," and while the charge there was adulteration, by adding to articles of food consumption poisonous and deleterious substances, a much more serious matter than misbranding, yet the court held that, in order to condemn a food product upon the ground that it is adulterated, it is incumbent upon the government to establish the fact that the added substances may render the article injurious to health. This conclusion was reached evidently upon the theory that the legislative intent was to accomplish a substantial and beneficial result to the public and not merely for the purpose of exercising an arbitrary control over private business.

[2] It is undoubtedly true that vinegar not made from apple cider, even though chemically equal to cider vinegar, may not be branded as such. On the other hand, vinegar made from apple cider is not misbranded by reason of its failure to meet the chemical test. Misbranding is included in the statutory prohibition, because it bears some relation to the conservation of the public health, and not primarily because a purchaser's whims were to be protected, and, though doubtless the test of misbranding a product is whether it is true to name, there is no occasion for overstrictness in applying this test in a case where the public health cannot possibly be jeopardized. In the Standard Encyclopedia, under the caption "Cider," it is said:

"Apples commonly used for making cider are by no means tempting to the palate and are, in fact, unfit for eating raw or ordinary cooking. * * * In the United States it is considered that a certain proportion of decay in fruit improves the flavor."

Keeping in mind the underlying purpose to protect the public health and the admissions in this case that the present article is made wholly from "sound and mature apples, free from rot and ferment," it is clear that condemnation should not be made unless the statute imperatively requires it. Definitions of cider, which include the method or process of its manufacture, written long before public need required the conservation of our food products, are not helpful to the determination of the question presented in the instant case. Even these definitions call only for the juice of apples, and do not literally exclude the pressing of apples dehydrated and later hydrated in equivalent proportions.

The missing and essential element for the government's case is found only in the supposed judicial knowledge that the popular definitions have reference only to fresh apples. Such knowledge was declared in the court below, and the judgment based thereon. The danger of reliance on judicial knowledge founded on past impressions is well illustrated by the salad oil cases. The very branding which the court, in Brina v. U. S., 179 Fed. 373, 105 C. C. A. 558, said it judicially knew was so untrue as to compel the conclusion of misbranding, two years later, was shown to the same court in Von Bremen v. U. S., 192 Fed. 904, 113 C. C. A. 296, to be so true as to require an instructed verdict for the respondent. In the present case it is conceded

that this identical product has been sold, and accepted by the trade under this name, in great quantities for many years and without challenge until now. While there is nothing in the agreed statement of facts to show how far this acceptance has been with knowledge, yet the court cannot judicially know that this acceptance was so wholly without knowledge of the facts as to be unimportant.

[3] It is not seriously contended on the part of the government that the fluid obtained from pressing the evaporated apples, after the water taken therefrom has been restored, is not apple cider. It is suggested that possibly there is some constituent element of the apple removed by the dehydrating process that is never restored thereto. There is no proof of that fact, but there is an admission that, even if such constituent element is removed, it is so immaterial and inconsequential in quantity that the science of chemistry cannot disclose it. This brings this case clearly within the doctrine announced in U. S. v. Lexington Mill & Elevator Co., supra, to the effect that the burden is upon the government to establish by the evidence, not merely a technical, but a substantial, violation of the federal Food and Drug Act, which may render the article injurious to health, or mislead the public to its prejudice or harm, or induce the purchase of a different article than the article desired.

[4] Nor should the fact be overlooked that this is a highly penal statute. The government in this proceeding is asking the condemnation and forfeiture of 95 barrels of vinegar because it is adulterated and misbranded, and the burden is upon the government to establish one or both of these alleged facts. While the government is practically conceding in the agreed statement of facts, that the liquid obtained from evaporated apples by this method is apple cider, identical in taste, substance, and chemical test with apple cider pressed from the unevaporated apples, except that there may, perhaps, be some constituent element lacking, the quantity, if any, being so small that its absence is not shown by chemical test, and further conceding that the same has been sold upon the market for many years as apple cider, and that vinegar made therefrom has been an article of commerce, at least since January 1, 1906, under the name and brand of apple cider vinegar, and sold in quantities by this one manufacturer alone aggregating 100,000 barrels a year, nevertheless, it is now insisting that the branding of this product as apple cider vinegar is calculated to deceive and mislead the purchaser into buying an article other than the brand implies.

It may be true that a large part of the purchasing public has no knowledge whatever in reference to the manufacture of cider from evaporated apples, and for that reason might have a distinct prejudice against such a method of manufacture. Undoubtedly the Pure Food and Drug Act contemplates the protection of the public in this regard, but only to the extent that the public shall not be deceived or misled by the brand into buying an imitation of the article or a substitute for the article indicated by the brand. If, however, it is in truth and in fact buying the identical article indicated by the brand, manufactured from the same basic elements, and none other, the purpose of the statute is accomplished, and the process of manufacture is of no importance.

A substantial, if not an exact analogy, may be found in the manufacture of maple syrup. The water is partially evaporated from the sap of a maple tree in order to produce maple syrup. If the evaporation process is continued until sufficient of the water is evaporated, the product is maple sugar. If to this sugar there is added as much water as was evaporated therefrom in the process of reducing maple syrup to maple sugar, and the sugar is dissolved and held in solution, the product again becomes maple syrup. It has been held by the Pure Food Department (Circular 136) that maple syrup manufactured in this way may be properly branded "Maple Syrup." Yet, notwithstanding such syrup responds to the chemical tests, a doubt might be suggested that possibly a constituent element was removed from the maple syrup in the process of reducing it to maple sugar that could not be wholly restored thereto. It is also possible that there might be a popular prejudice against maple syrup manufactured in this way, yet it would hardly be contended that Congress is expending its time in the enactment of laws in furtherance of perpetuating prejudices founded upon mistake and misunderstanding, and at war with the conceded facts of the case.

Another illustration may test the soundness of the proposition that there is a misbranding of this vinegar. Cream is a substance which, by the unaided process of nature, rises to the top of milk. A generation or two ago this would have been the popular definition. The process of its development was well known, and required, at the least, some hours of time and favorable conditions. Then it was discovered that the butter fat can be separated from the milk in a few minutes by a centrifugal separator, and that the product is really cream; yet it is at least probable that for some time a substantial part of the public would have refused to buy butter fat in this form unless it had been labeled "cream," and without disclosing the substitution of artificial for natural methods. So the catalogue of present-day foods and those that may fairly be developed will disclose frequent instances of great change in methods of manufacture or treatment, without any resulting necessity of changing the name of the product.

We get no controlling direction from the decided cases. The salad oil cases have been mentioned. In the Vinegar Case (D. C.) 186 Fed. 399, the product was in fact distilled vinegar with a dash of apple cider. It was labeled as a blend of cider vinegar and distilled vinegar. From the view that the court took of the meaning of the label, the misbranding was obvious. In the Tepee Apple Case, 179 Fed. 985, the label was considered to mean that the apples were grown in Michigan, and this became a geographical misrepresentation, expressly forbidden by the act.

We do not overlook that the New York Supreme Court and the United States District Court for the Eastern District of Wisconsin have held that claimant's vinegar is misbranded. In each case the opinion seems to be based in part upon inferences and testimony not presented by this record, and in part upon judicial knowledge that nothing is apple cider unless it is pressed from fresh apples—an inference wholly inconsistent with the facts here conceded.

For the reasons above stated, a majority of the court is of the opinion that the judgment of the District Court is not sustained by the agreed statement of facts. The judgment is reversed, and cause remanded for further proceedings in accordance with this opinion.