## UNITED STATES v. ONE CAN OF KOLOLIVA.

## SAME v. ONE CONTAINER OF KLECKNER'S OLIVAROMOL.

### Nos. 5422, 5426.

District Court, D. Massachusetts.

June 21, 1938.

Francis J. W. Ford, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass.

David N. Goldman, of New York City, for claimant.

McLELLAN, District Judge.

These libels, one for the condemnation of a can of Kololiva and the other for the condemnation of a container of Olivaromol, were tried without a jury. Both articles were shipped by the claimant in interstate commerce, and at the times of the filing of the libels, both articles remained unsold in the possession of the consignee and within the jurisdiction of this court.

The can of Kololiva was labeled:
"Kleckner's
10 kilos
Kololiva
Grade A
Soluble in Fats & Oils
David Kleckner & Son, Inc.
Importers and Manufacturers
4304–12th Avenue Brooklyn, N. Y."

The libel alleges and the claimant denies that this article is adulterated in violation of Section 7 of the Food and Drug Act, 21 U.S.C.A. § 8, in that it contains added poisonous and deleterious ingredients, lead and copper, which may render it harmful to health. The libel also alleges and the claimant denies that this article is misbranded in violation of Section 8 of the Food and Drug Act, 21 U.S.C.A. § 9, in that the name "Kololiva" deceives and misleads the purchaser in that it suggests that this is a product containing olive oil or a color derived from olive oil, and in that it was sold under the distinctive name of another article.

The libelant at the trial abandoned the claim as to the copper content of the article.

The product Kololiva is prepared by mixing 75 lbs. of cocoanut oil with 25 lbs. of chlorophyll in an enamel kettle and heating it. The evidence discloses nothing with reference to the cocoanut oil requiring comment. Judicial notice may be taken of the fact that chlorophyll is the green coloring matter of plants, and that, owing to its instability, it has never been obtained absolutely pure. According to Dr. J. Stewart Rooney, a qualified toxicologist, who was called as a witness by the libelant, commercial chlorophyll contains some lead. The chlorophyll used by the claimant was purchased from Merch & Company, Inc., manufacturing chemists, who represented the product as a purely vegetable green color obtained from Germany. Though the libel-

ant's brief suggests that the lead in Kololiva might have been absorbed in part from solder in the can, there is no adequate evidence that the lead there contained was derived from any other source than from the unstable chlorophyll.

Kololiva, composed as heretofore stated of cocoanut oil and chlorophyll, is a coloring compound which is sold to dealers who use it for blending, mixing or compounding edible oils. It is not sold for consumption as such. The dealers mix about two lbs. of Kololiva with about a gallon of edible oil, and then about two ounces of this mixture is combined with a barrel (about 50 gallons) of edible oil. This product is then distributed by the dealer to retailers or consumers. The consumer uses the final product with food in somewhat the ratio of an ounce of the oil to two pounds of food.

The parties have stipulated and I find that in its original state the Kololiva here involved contained 81 parts of lead to one million parts of the whole product. In view of the fact that lead is a cumulative poison, I daresay that if Kololiva were intended or used as a food in its original state, the amount of lead therein would be such as to render it harmful to health. But Kololiva, as such, is not used for food, drink, confectionery, or condiment. It is used as a coloring compound in the mixing or blending of edible oils, which edible oils are consumed usually with food. Without pausing to complete the arithmetical process, it seems sufficient to say that when 2 lbs. of Kololiva is combined with a gallon of edible oil, and two ounces of this mixture is combined with a barrel of about 50 gallons of edible oil, the proportionate part of lead in the final product is insignificant, even when increased by the amount of the lead content in the other product called Olivaromol. The statute only condemns food containing an added poisonous or other added deleterious ingredient when such addition might render the article of food injurious to health. See United States of America v. Lexington Mill & Elevator Company, 232 U.S. 399, 34 S.Ct. 337, 58 L.Ed. 658, L.R.A. 1915B, 774. The test is not the proportionate amount of lead in Kololiva, but the amount thereof contained in the final product intended to be consumed by the public. See Four Hundred and Forty-Three Cans of Frozen Egg Product v. United States of America, 226 U.S. 172, 33 S.Ct. 50, 57 L. Ed. 174. Applying this test and guided largely by the testimony of the libelant's

own expert as to the harmlessness of such a small quantity of lead as is contained in the final product, I conclude that the Kololiva here involved is not an adulterated food containing "added poisonous or other added deleterious ingredient which may render such article injurious to health" within the meaning of Section 7 of the Food and Drug Act.

The libelant has not sustained the burden of showing that Kololiva deceives and misleads purchasers in that it suggest that it contains olive oil or a color derived from olive oil. See United States of America v. Lexington Mill & Elevator Company, supra; United States v. Washington Dehydrated Food Company, 8 Cir., 89 F.2d 606.

On the question whether Kololiva was sold under the distinctive name of another article, a certified food color, the evidence was conflicting and I find that it was not so sold.

In the case against Kleckner's Olivaromol, the libel states in substance that Olivaromol is adulterated in violation of Section 7 of the Food and Drug Act in that it contains an added poisonous and deleterious ingredient, lead, which may render it harmful to health. It is alleged further that the article is misbranded in violation of Section 8 of the Food and Drug Act, in that the name "Olivaromol" appearing upon the label is false and misleading and tends to deceive and mislead the purchaser in that it creates the impression that the article is a flavor derived from olives or olive oil.

Olivaromol contains cocoanut oil, certain ethers, a yellow color (AB color) certified by the Department of Agriculture, and an amount of chlorophyll. It is not, as such, intended for human consumption, but is a flavoring only. As stipulated, Olivaromol contains 94 parts of lead to one million parts of the total product. This product finds its way into the edible oil designed for human consumption in substantially the same proportions as in the case of Kololiva.

The amount of lead which, through the medium of Olivaromol and Kololiva, reaches the final product is so insignificant as, on the basis of the testimony of the libelant's expert, almost to require a finding that neither of the claimant's products contained a sufficient quantity of lead to render the ultimate article possibly harmful to health.

It is true that the claimant's trademark covers the word "Oleveromol", and

that the label on the can seized had on it the word "Olivaromol". The label, however, was an old one, and I am satisfied it was used by mistake. See United States v. S. Gumpert et al, (C. C. New York),[1] White & Gate's book on the Food & Drugs Act, page 182.

What has been said as to the alleged charge of a misbranding in connection with Kololiva applies in the main to Olivaromol. The libelant has not sustained the burden of showing a misbranding within the meaning of the Food and Drug Act.

In each case the libelant's motion for judgment is denied.

The claimant moves for judgment and for costs. In each case a judgment or decree is to be entered denying condemnation and directing the return of the seized article by the Marshal to the claimant, but upon the authority of United States v. French Sardine Company, Inc., 9 Cir., 80 F.2d 325, that portion of the claimant's motions for judgment seeking the assessment of costs against the United States is denied.