BOARD OF COMMISSIONERS OF BUTLER COUNTY
v. BEATY.

*Mob violence — Liability of county — Section 6278 et seq., General Code — Who may recover damages — Words and phrases — "Mobs" and "lynching" defined — Assault by strikers.*

1. A collection of people assembled for an unlawful purpose and intending to do damage to workmen returning from their work at a factory where a strike is in progress, constitutes a "mob," and an act of violence upon the body of one of such workmen is a "lynching," within the meaning of Section 6278, General Code.

2. The liability of a county for damages resulting from mob violence is not limited to one who is apprehended for committing a crime; but a right of action inures to the benefit of one who is not so held in custody.

3. The right to recover damages for injuries from mob violence is not dependent upon the attempted exercise of "correctional power" by a mob, but may be predicated upon acts of violence committed by a collection of people assembled for an unlawful purpose and intending to do damage or injury to anyone.

4. In an action for damages for mob violence it is not error to re-
fuse to charge the jury that the county is not liable until such
a degree of disorder has developed that the mayor becomes
satisfied that he can no longer cope with the situation and calls
upon the sheriff to aid in the suppression of such violence.

(Decided May 19, 1919.)

ERROR:    Court of Appeals for Butler county.

*Mr. Isaac C. Baker* and *Mr. Ben A. Bickley,* for
plaintiff in error.
*Messrs. Andrews & Andrews* and *Mr. W. C.
Shepherd,* for defendant in error.

SHOHL, P. J.    In October, 1915, there was a
strike at The Hamilton Foundry & Machine Com-
pany.    Defendant in error while returning from
his work there was attacked by a group of striking
workmen.    He brought suit against the county com-
missioners for the sum of $5,000, under Part Second,
Title II, Chapter 20, General Code, relating to mobs.
A verdict and judgment in the sum of $230.63 was
rendered in his favor, and the commissioners prose-
cute error to this court.    An examination of the
evidence supports the conclusion that there was a
collection of people assembled for an unlawful pur-
pose, intending to do damage to the workmen re-
turning from the foundry and machine company.
They, therefore, constituted a "mob" within the
statutory definition set forth in Section 6278, Gen-
eral Code.    They performed an act of violence upon
the body of Martin Beaty, which constituted a
"lynching," as defined in the same section.
    The "Mob Act" is constitutional, *Commissioners*
v. *Church,* 62 Ohio St., 318, and must be liberally

construed, *Phillips Sheet & Tin Plate Co.* v. *Griffith, Admx.,* 98 Ohio St., 73. It is contended by plaintiff in error that the statute in question relates only to acts of violence by a mob against one apprehended for committing a crime and can not be applied to acts of violence against persons not so held in custody. Special charge No. 7, which the court refused to give, is based on this contention. Under Section 6278 a mob is either a collection of people assembled for an unlawful purpose and intending to do damage or injury to any one, or a collection of people pretending to exercise "correctional power" over other persons by violence and without authority of law. An examination of the statute discloses that a mob may be constituted in either of two ways, only one of which requires the pretended exercise of correctional power. There is no justification, therefore, in limiting the liability imposed by statute solely to cases of mobs of the second character to the exclusion of a mob comprised as defined in the first part of the section. No authority is cited by the court in the opinion of *Gray* v. *Gibson et al.,* 12 N. P., N. S., 673, to support the opposite conclusion. At common law counties or municipal corporations are immune from liability for failing to preserve the public peace in the absence of a statute. (28 Cyc., 1295.) The policy of imposing liability upon a civil subdivision of government has long been recognized and enforced. In *City of Chicago* v. *Sturges,* 222 U. S., 313, at page 323, the court says:

"The policy of imposing liability upon a civil subdivision of government exercising delegated police power is familiar to every student of the

common law. We find it recognized in the beginning of the police system of Anglo-Saxon people. Thus, 'The Hundred,' a very early form of civil subdivision, was held answerable for robberies committed within the division. By a series of statutes, beginning possibly in 1285, in the statutes of Winchester, 13 Edw. 1 c. 1, coming on down to the 27th Elizabeth, c. 13, the Riot Act of George I. (1 Geo. I, St. 2) and Act of 8 George II, c. 16, we may find a continuous recognition of the principle that a civil subdivision entrusted with the duty of protecting property in its midst and with police power to discharge the function, may be made answerable not only for negligence affirmatively shown, but absolutely as not having afforded a protection adequate to the obligation. Statutes of a similar character have been enacted by several of the States and held valid exertions of the police power. *Darlington* v. *Mayor, &c., of New York,* 31 N. Y. 164; *Fauvia* v. *New Orleans,* 20 La. Ann. 410; *County of Allegheny* v. *Gibson, &c.,* 90 Pa. St. 397. The imposition of absolute liability upon the community when property is destroyed through the violence of a mob is not, therefore, an unusual police regulation. Neither is it arbitrary, as not resting upon reasonable grounds of policy. Such a regulation has a tendency to deter the lawless, since the sufferer must be compensated by a tax burden which will fall upon all property, including that of the evil doers as members of the community. It is likewise calculated to stimulate the exertions of the indifferent and the law-abiding to avoid the falling of a burden which they must share with the lawless. In that it directly operates on and affects public

opinion, it tends strongly to the upholding of the empire of the law."

See also *Wells Fargo & Co.* v. *Mayor of Jersey City*, 219 Fed. Rep., 699, and 4 Dillon on Municipal Corporations (5 ed), Section 1636. The cases cited in the note in Dillon show that some of the statutes are applicable to injuries to persons as well as damage to property. The statute under consideration was originally passed in 92 Ohio Laws, 136, entitled, "An act for the suppression of mob violence." It is, therefore, of the same character as the statute referred to in the foregoing authorities, the purpose of which is to punish the inhabitants of a community for permitting riots, and to incite them to suppress and prevent the same by making it a matter of interest to the taxpayers to give their moral support to the enforcement of law and order. See note to *P., C., C. & St. L. Ry. Co.* v. *Chicago* (242 Ills., 178), 44 L. R. A., N. S., 358. Liability under such a statute has been upheld where the person lynched was not a prisoner. (*Brown* v. *Orangeburg County*, 55 S. C., 45.) The court did not err in refusing to give special charge No. 7.

Complaint is made of the refusal of the court to give special charges to the effect that the defendants were not liable until such a degree of disorder has developed that the mayor becomes satisfied that he can no longer cope with the situation and calls upon the sheriff to aid in the suppression of said violence. The statute by its terms does not require such a request. If there is a lynching the statute imposes a liability on the county. There is no basis in the language of the statute for the requirement that the mayor should call upon the sheriff

for aid.  Where the language of the statute is plain and admits of no more than one meaning, there is no duty on the courts to interpret it.  Its meaning must in the first instance be sought in the language in which the act is framed, and if that is plain, and if the law is constitutional, the sole function of the courts is to enforce it according to its terms. *Village of Elmwood Place* v. *Schanzle,* 91 Ohio St., 354, 357; *Slingluff et al.* v. *Weaver et al.,* 66 Ohio St., 621; *D. T. Woodbury & Co.* v. *Berry,* 18 Ohio St., 456; *Caminetti* v. *United States,* 242 U. S., 470, 485, and *United States* v. *First Natl. Bank of Detroit,* 234 U. S., 245, 258; *United States* v. *Lexington Mill, etc. Co.,* 232 U. S., 399, and *Lake County* v. *Rollins,* 130 U. S., 662, 670, 671.

When we consider the express statement of the court in *Phillips Sheet & Tin Plate Co.* v. *Griffith, Admx.,* that the act is to be liberally construed, there is no warrant for the restriction contended for.  The court did not err in refusing the special charges requested.

The judgment will be affirmed.

*Judgment affirmed.*

HAMILTON and CUSHING, JJ., concur.