### HAMMETT v COOK et

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided April 18, 1932

Rocker & Schwartz, Cleveland, for plaintiff in error.

P. L. A. Lieghley and E. P. Westenhaver, Cleveland, for defendant in error.

VICKERY, J.

Now all this is important because although the plaintiff testified that she did not know

any of these people, and she herself had been guilty of no offense for which they should want to hurt her, she seeks to recover $5,000 against the County Commissioners on the ground, as alleged in her amended petition, that "she was attacked by a mob which was lynched at the hands of said mob which was then and there assembled for an unlawful purpose, to-wit for the purpose of exercising correctional power over the plaintiff and her fellows by violence and without authority of law, etc.," thereby apparently endeavoring to bring her action under §6281 of §§6278 to 6289 inclusive, entitled an act for the suppression of mob violence.

Sec 6281, GC reads:

"**Damages in case of lynching.** A person assaulted **and lynched** by a **mob** may recover from the county in which such assault is made, a sum not to exceed five hundred dollars; or, if the injury received therefrom is serious, a sum not exceeding one thousand dollars; or, if such injury result in permanent disability to earn a livelihood by manual labor, a sum not to exceed five thousand dollars."

It will be seen, and the Supreme Court has very recently so reiterated in **Lexa v Zmunt et, 123 Oh St, 510,** that the recovery authorized by §6278 et seq, GC is penal in its nature, and that the statute is also in derogation of the common law, and must therefore be strictly construed. (Syllabus 1).

And syllabus 2 holds:

"The title of the act 'for the suppression of mob violence' indicates the purpose which induced the enactment of such law, and must be considered in arriving at a correct interpretation of its terms."

The writer of this opinion is not unfamiliar with that purpose, having drafted the act which was ultimately passed in 1898 and having been counsel for the successful litigant in the Supreme Court in the case of **Caldwell v Board of Commissioners of Cuyahoga County, 62 Oh St 318,** decided in 1900 and cited in the Lexa case supra. In the act as originally passed in 1896 the amounts recoverable were fixed or determined by the statutes; i. e. they were lump sums of five hundred dollars, one thousand dollars and five thousand dollars and were obviously penalties. Consequently if a person were merely scratched under the conditions set forth in the act, he would be entitled to at least five hundred dollars. The writer of this opinion apprehended then that the in-

variability of the sums authorized might render the act unconstitutional, and so at his suggestion the Legislature passed the present amended act of 1898 changing the wording of the amounts recoverable to a sum **not to exceed** so many dollars in each instance. However, the Supreme Court later in 62 Oh St, 318, held the act of 1896, even with the fixed amounts, constitutional. And consequently the present act is not only likewise constitutional, but likewise unquestionably penal and corrective in its nature.

Now in the Caldwell case supra, Caldwell and his fellow workmen were assaulted by strikers who had assembled for the purpose of exercising correctional power over the plaintiff himself and his fellows, in order to punish them for not participating in the strike and to intimidate them; and for that purpose a member of the mob, so assembled without authority of law, threw a heavy glass insulator at the plaintiff striking him, and others fired bullets at him, one of which struck him in the leg. And in that case the Supreme Court held that such a set of facts constituted a cause of action under §6278 et seq GC.

So that brings us to the question whether this woman who was tumbled over on the public square was lynched by a mob.

The first section of the act, §6278, GC, defines both **mob** and **lynching** as follows:

"A collection of people assembled for an unlawful purpose and intending to do damage or injury to anyone, or pretending to exercise correctional power over other persons by violence and without authority of law, shall be deemed a 'mob' for the purpose of this chapter. An act of violence by a mob upon the body of any person shall constitute a 'lynching' within the meaning of this chapter."

It is argued that the word "or" in the statute permits a recovery when the collection of people assembled for an unlawful purpose intends to do damage or injury to someone, even without a purpose to exercise correctional power over any one (although the correctional purpose is alleged in the amended petition in the instant case), and that inasmuch as this group of communists was anti-government generally and had banners with the word "fight" upon them, and inasmuch as in dispersing them there was some rowdyism and one member of the group grabbed the bridle of the horse of an officer, that these facts constitute a ground for recovery of damages from the county.

It might be remarked, however, that plaintiff's own witness in connection with

the answers elicited regarding an attempt by any of the crowd to fight the police, answered, "I wouldn't say he did it in an effort to dismount the officer. I think he did it more as a protective measure for himself, because the horse was charging towards him."

However that may be, the Supreme Court in so many words clearly interprets the meaning, scope and purpose of this §6278 GC in the third syllabus of the Lexa case supra, thus:

"To warrant a recovery under such statute, it is not sufficient to show an injury resulting from the acts of a collection of people assembled for an unlawful purpose and intending to do damage or injury to some one, but there must appear also a purpose of exercising correctional power by violence and without authority of law."

And in its opinion the Supreme Court continues at page 515:

"Of the various meanings of the word 'or' it is quite clear that that meaning must have been intended by the Legislature in the enactment of this statute which serves to relate similar ideas and connect them to each other, and that to constitute a mob, the activities of which were sought to be suppressed by this legislation, the unlawful purpose of the collection of persons must comprehend the exercise of correctional or compelling power without authority of law."

Now nowhere in this record is there any suggestion of proof of the allegation in plaintiff's amended petition that she was attacked by a **mob** and was **lynched** at the hands of said mob, which was assembled **for the purpose of exercising correctional power** over the plaintiff and her fellows.

She was injured, if at all, when the officers sought to disperse the crowd which had become unruly to the extent of pulling at street car trolleys, and pulling at police captain's buttons. And the crowd running in all directions knocked this plaintiff over and probably trampled on her. In other words, her injury resulted from an enforcement of law and order· and a suppression of the activities of the group. Now adverting again to the Lexa case supra, there can be no doubt but that the purpose of enactment of the act was not to put a penalty upon the county for enforcement of the law by the police, but rather for a failure to exercise due vigilance and the authority necessary to accomplish its enforcement; quoting from page 513:

"It is quite clear that its enactment was primarily for the purpose of the prevention and suppression of the operation of self constituted groups, by whatever name, which form and assemble for the purpose of inflicting punishment upon those whom they conceive to have been guilty of conduct offensive to them, and which should in some manner receive punishment, or for the purpose of intimidating and compelling action and conduct in accordance with the views and desires of the intimidators. The method adopted to attain the end sought was to penalize the subdivisions of the state for failure of their officers to exercise the diligence required to prevent such mob violence."

And so we say there is no fundamental basis in the instant case under these circumstances for the enforcement of a penalty against the County Commissioners.

Now, as already stated, this plaintiff admits that she had been guilty of nothing for which this crowd should want to hurt her, and yet she alleges, evidently in order to bring herself within the act, that she was the definite object of the mob's violence; but of this there is not one scintilla of proof. One wonders why the plaintiff's amended petition did not make averments sufficient to bring her action under §6283, GC:

**"Person suffering death or injury by mob trying to lynch another.** A person suffering death or injury from a mob attempting to lynch another person shall come within the provisions of this chapter. * * *"

Of course, had the proof shown that the plaintiff was injured by a crowd which was a mob and that such mob was in fact attempting to lynch any one in particular, the pleadings could have been amended to conform with such proof. But there is an equal dearth of any such evidence and that may be the reason why the plaintiff chose to aver that she herself was lynched inasmuch as she could not prove that any one else in particular was lynched.

And, as pointed out above, such violence would have had to have been directed against a particular person or persons. This is clear from a reading of this particular section which uses the phrase, "another person," as well as from authorities since the passing of the original act in 1896.

Gray v Gibson et, 12 N.P. (n.s.), 673, Syllabus 1, reads:

"The statutory provision for recovery of damages by persons who have suffered at

the hands of a mob is limited to injuries whether fatal or otherwise, suffered from a mob attempting to lynch another, and does not embrace injuries resulting from violence by a mob having no intent or purpose to lynch."

This authority is cited in Davis, Administratrix v Board of Commissioners of Mahoning County, decided 1917, and found in 28 O. C. A., 145. In the opinion in that case Judge Farr reasons at page 149 as follows:

"An 'attempt' is the effort or endeavor to carry into execution a previously conceived plan or purpose; therefore the phrase 'another person' can not mean 'no one in particular,' or 'everybody in general,' but must be the subject of the plan, the object of the purpose, and such was the legislative intent. Said act, though liberal in its terms, was never intended to provide compensation for the indiscriminate, lawless, predatory acts of a riotous mob generally but not definitely on mischief bent, but to provide a remedy for damages suffered from definite, specific acts, and such is the reasonable import of the language used and easily deducible therefrom."

And such is the clear import of the language used in the Lexa case, supra, and more particularly in the syllabus of that case which is in fact the law of that case.

It does not do to say that the statements of the definition of the law as laid down in the Lexa case are **obiter dicta**, as the dissenting member of this decision opines. It is true that the facts in the Lexa case had to do with an injury sustained by reason of the combined action of several persons when they assaulted the plaintiff, following a plan agreed upon to resist enforcement of payment for lunch and cigars in a restaurant; it is true that the facts in the Lexa case, are different from those in the instant case, but they are particularly different in that in the instant case there is no suggestion of evidence that the collection of persons **intended** to harm the **plaintiff**, nor anyone else.

But however the facts, the law invoked is the same. And the interpretation placed upon the law,—its purpose, scope, and meaning—by the Supreme Court cannot be twisted to its exact opposite by a lower court in order to find the contrary. Where the question of the interpretation of the law is vital to and controls the judgment, rendered, it can scarcely be declared **obiter**. And particularly the syllabus having been submitted to and approved by the judges concurring in the opinion under Rule VI of the Supreme Court rules of practice (in this case by all the judges) and epitomizing points of law arising from questions made in this case and necessary to be disposed of in order to reach the decision rendered, cannot be termed **obiter**.

There is but one decision which we have been able to disscover which holds that the liability of a county for damages resulting from mob violence is not dependent upon the exercise of "correctional power" by a mob; but the opinion in that very case, Butler Co. Com'rs v Beaty, 30 O. C. A., 391, holds that in that case there was a "lynching" because there was an act of violence committed upon the body of a workman by a collection of people, assembled for an unlawful purpose, and intending to do damage to such workmen returning from their work at a factory where a strike was in progress. We perceive that under those circumstances there was clearly an attempt to exercise correctional power over such workman. It is therefore difficult to divine the import or the logic of the statement in the opinion and in the syllabus that the exercise of "correctional power" is not a necessary element.

In the instant case, as already stated, the **averment** of an exercise of "correctional power" by the mob over a person was made, but the facts proved did not even approach constituting a "lynching" by a "mob",—an exercise of "correctional power" by violence by a mob.

True the plaintiff's amended petition continued with the averment that the mob was assembled for the purpose of intimidating and compelling action and conduct in accordance with the views and desires of the members of said mob but this statement, if it had not been coupled with the allegation of a purpose to exercise correctional power over the plaintiff or another person or persons, or words of similar purport to signify a "lynching," would clearly have made the petition subject to demurrer.

Holding these views the majority of the court thinks that the court would have committed error had it not directed a verdict for the defendant; that it is immaterial, under the allegations and the proof in this case, whether the plaintiff was injured by this collection of persons before the police arrived or while the police were in the act of suppressing and dispersing it; and therefore plaintiff's contention that the question whether or not this injury was caused while the so-called mob was being dispersed was a question of fact for the jury, is absolutely unfounded upon any prin-

ciples of law relating to the statutes under consideration, inasmuch as there was no "mob", there was no "lynching" and no attempt to "exercise correctional power" over the plaintiff or anyone else, either under the plain meaning of the definitions contained in the act or the interpretation placed upon them by our Supreme Court.

The court below could therefore have done nothing other than it did do in directing a verdict and entering up judgment for the defendants. And this court therefore can do nothing else but affirm the judgment.

WEYGANDT, J, concurs.
LEVINE, PJ, dissents.